CLIFFORD, APPELLANT, *v.* GREAT FALLS GAS CO.,
RESPONDENT.

(No. 5,266.)

(Submitted June 26, 1923. Decided July 16, 1923.)

[216 Pac. 1114.]

*Contracts—Duress Per Minas—Unlawful Confinement—Collec-
tion of Debt—Nonsuit—When Improper.*

Trial—Nonsuit—Plaintiff's Testimony Taken as True.
  1. On a motion for nonsuit, all the evidence tending to prove
  plaintiff's case will be assumed to be true.
Contracts—Consent—Menace—Unlawful Confinement.
  2. Under section 7473, Revised Codes of 1921, the consent of a
  party to a contract must be free; it is not free when obtained
  through menace (section 7475), and under section 7478, a threat of
  unlawful confinement of the person threatened constitutes menace.
Same—Menace—Unlawful Confinement—Collection of Debt—Nonsuit
  Improper.
  3. *Held,* under the above rules, that where plaintiff's testimony in
  his action to recover $200 claimed to have been obtained from him
  by defendant gas company by the use of threats, showed that he
  had surreptitiously used gas without the same having first passed
  through the gas-meter, that defendant's manager upon discovery
  of that fact had threatened him that unless he paid the amount
  above mentioned he would send him to. the penitentiary, and that
  thereupon to avoid prosecution or being sent to prison he made pay-
  ment, contending, however, that he had used only $10 worth, a mo-
  tion for nonsuit was improperly granted, since the testimony would
  have justified a finding that the threats were made for an unlawful

2. Duress sufficient to invalidate contract, see note in 26 **Am. Dec.** 374.

purpose—the collection of a debt, and that the acts of defendant's manager constituted a menace under section 7478, Revised Codes of 1921.

Same—Suppression of Criminal Prosecution—Parties *in Pari Delicto*—Payment Recoverable, When.

4.  Though money paid on an agreement to suppress a threatened criminal prosecution cannot be recovered because illegal, the law leaving the parties where it finds them, recovery may be had if payment was induced by duress, menace or oppression, the parties under such circumstances not having been *in pari delicto.*

*Appeal from District Court, Cascade County; H. H. Ewing, Judge.*

ACTION by J. F. Clifford against the Great Falls Gas Company. Judgment for defendant and plaintiff appeals. Reversed and remanded.

*Mr. T. F. McCue,* for Appellant, submitted a brief and argued the cause orally.

The modern authorities forbid the doing of the things that the defendant did in this case. Menace is defined by our statute, section 7478, Revised Codes, as follows: "Menace consists in a threat of injury to the character of any such person." "To threaten one illegally with having committed a crime and to prosecute the person criminally for the same, constitutes menace." (*Morrill* v. *Nightingale,* 93 Cal. 452, 27 Am. St. Rep. 207, 28 Pac. 1068; see, also, *Pendleton* v. *Greever,* 80 Okl. 35, 193 Pac. 885; *Smith* v. *Steely,* 80 Iowa, 738, 45 N. W. 912; *Turle* v. *Sargent,* 63 Minn. 211, 56 Am. St. Rep. 475, 65 N. W. 349; *Koons* v. *Vauconsant,* 129 Mich. 260, 88 N. W. 630.)

Under the admitted facts and record in this case, the acts of the manager of the defendant company in the presence of its attorney amounted to and is, as a matter of law, extortion. (*Baldwin* v. *Hutchison,* 8 Ind. App. 454, 35 N. E. 711; *Hulhorst* v. *Scharner,* 15 Neb. 57, 17 N. W. 259; *Springfield F. & M. Ins. Co.* v. *Hull,* 51 Ohio St. 270, 25 L. R. A. 37, 37 N. E. 1116; *Heckman* v. *Scwartz,* 50 Wis. 267, 6 N. W. 891.)

*Messrs. Maddox & Church,* for Respondent, submitted a brief; *Mr. Fletcher Maddox* argued the cause orally.

In practically all of the cases cited by appellant the money or property involved was obtained from a person other than the one charged with the commission of a crime, while in the case at bar the money was paid by the same person who stood charged with the commission of the offense.

The respondent submits that under the law as applied to the facts in this case, the plaintiff was not entitled to recover because the unlawful use of the gas by him was admitted and the respondent's demand for the payment of $200 was a demand made in good faith by the manager of the respondent company believing that the amount demanded was within his rights, and thus there was neither duress, menace nor extortion.   This theory finds support in the case of *Ingebrigt* v. *Seattle Taxicab & Transfer Co.,* 78 Wash. 433, 139 Pac. 188.

This subject has also received consideration by this court in *Bullard* v. *Smith,* 28 Mont. 387, 72 Pac. 761. It appeared that one Donaldson believed that Smith had stolen some sheep from him.   So believing he came to Smith's room in a hotel and demanded a complete settlement of the damages occasioned by the theft of the sheep.   His evidence does not disclose that any warrant had been issued against Smith. Donaldson threatened Smith that if a settlement was not made he would cause Smith's arrest.   After further conversation and partially exhibiting a six-shooter he secured from Smith a note for $1,000.   This note was assigned by Donaldson for a valuable consideration before maturity.   After reviewing the authorities the court held that the evidence was insufficient to sustain a verdict by a jury finding that the note sued on was executed in duress.   (See, also, 9 R. C. L., p. 719, sec. 9, and notes 1, 2; *Hilborn* v. *Bucknam,* 78 Me. 482, 57 Am. Rep. 816, 7 Atl. 272; *Thorn* v. *Pinkham,* 84 Me. 101, 30 Am. St. Rep. 335, 24 Atl. 718; *Beath* v. *Chapoton,* 115 Mich. 506, 69 Am. St. Rep. 589, 73 N. W. 806.)

For another reason the nonsuit was properly granted. Appellant contends that the money was not paid to settle any claim but because he feared he would be arrested and prosecuted criminally. If so, then the money was paid to suppress the criminal prosecution and in such case cannot be recovered back. As to this our position is that if appellant paid this money as he claims to relieve himself from the threatened prosecution, then, though the fear was induced by a threat of accusation of crime, he was at the same time a wrongdoer when he thus compounded a misdemeanor. And in this position the law leaves the parties where it finds them. The defendant in this instance being in possession of the $200, we invoke the maxim, "*In pari delicto, potior est conditio possidentis.*" (*Union Exchange Nat. Bank* v. *Joseph,* 231 N. Y. 250, 17 A. L. R. 323, 131 N. E. 905.)

MR. JUSTICE STARK delivered the opinion of the court.

In this action the plaintiff seeks to recover from the defendant the sum of $200 which is alleged to have been unlawfully obtained from him by the use of force, coercion and threats. The case was tried to a jury, and at the close of the testimony on the part of the plaintiff the court sustained defendant's motion for a nonsuit, whereupon judgment was entered in its favor, from which the plaintiff has appealed. The ruling of the court on the motion for nonsuit is assigned as error.

We approach a consideration of this case bearing in mind [1] the rule so frequently announced by this court that on a motion for nonsuit all the evidence tending to prove the plaintiff's case will be assumed to be true.

Upon the trial the plaintiff testified that he was a wholesale [2, 3] dealer in billiard supplies at South Great Falls and occupied, as a tenant, the storeroom and basement of a building located at No. 11 Fifth Street South; that the basement was used as a workshop; that in the storeroom he used a three-burner gas-plate, which was connected with the defendant's

gas-main through a gas-meter located in the back corner of the basement under a stairway near a large window on the alley-side; that on some occasions the gas flowing from the meter to the gas-plate "froze," and instead of calling upon the defendant company to send its man down to thaw out the pipe to remedy the defect, he tapped the gas-pipe leading from the outside of the building to the meter, and inserted a short piece of pipe and a device for burning gas without allowing it to pass through the meter; that the device was installed along in November or December, 1921; that he intended to take the matter up with the gas company and its officers and tell them what he had done, but had overlooked doing so; that he was willing to pay for what gas he had used and intended to do so.

On January 31, 1922, plaintiff had the gas burning through the device above described, and left his place of business for the purpose of going to the bank and postoffice. During his absence the building was set on fire by this burning gas, the fire department was called out, extinguished the flames and shut off the gas. Plaintiff did not return to his place of business until after the fire had been extinguished and the gas shut off. Meantime Mr. Bertke, manager of the defendant company, had arrived upon the scene with his attorney, and when the plaintiff approached, Bertke called out to him: "I have got the goods on you now. You are stealing gas. I will send you over the road to the penitentiary." Bertke, his attorney, and the plaintiff went down into the basement, and there Bertke said: "You have burned it all winter and I want $200." Plaintiff and Bertke then argued about the amount of gas which plaintiff had consumed through the device; Bertke claiming $200, based on an estimate of $50 per month, plaintiff insisting that he had not burned the gas on more than three occasions of thirty to forty-five minutes each, and that he could not have used to exceed $10 worth. In the course of the conversation Bertke said to his attorney: "I want you to attach everything he has got." Testifying further as to state-

ments made by Bertke at the time, plaintiff said: "He was making threats and said he would send me to the penitentiary and attach everything I had and take everything I had away from me; that I had done a criminal offense." During the course of the conversation a policeman came in, and plaintiff testified: "I did not know but what he was making an arrest. I believed that was what he was there for at the time. * * * Bertke said he wanted $200 right there and then or he would send me to the penitentiary." As to the effect of this conduct upon the plaintiff he said: "In regard to my believing he would send me to the penitentiary, the way he looked, I did not know what he would do. In my state of mind he looked like an elephant to me; he scared me, that was all; I was afraid they would arrest me and prosecute me." Under these circumstances plaintiff gave his check to the defendant company for $200, and in reference thereto testified: "I gave the check for the purpose of avoiding prosecution or being sent to the penitentiary or jail."

The statute relied upon by defendant to establish the fact that plaintiff was guilty of a criminal offense is section 11385, Revised Codes of 1921, which provides that every person who, with intent to injure or defraud, procures, makes or causes to be made any pipe or other conductor of gas, and connects the same with any main, service pipe or other pipe for conducting illuminating gas in such manner as to supply illuminating gas to any burner or orifice by or at which illuminating gas is consumed, around or without passing through the meter pro-. vided for the measuring and registering the quantity consumed, or in any other manner so as to evade payment therefor, is guilty of a misdemeanor.

The consent of a party to a contract must be free. (Sec. 7473, Rev. Codes 1921.) An apparent consent is not free when obtained through duress or menace. (*Id.*, sec. 7475.) The unlawful confinement of the person of the party constitutes duress (*Id.*, sec. 7477), and the threat of such unlawful con-

finement constitutes menace under the provisions of section 7478.

Did the acts of the defendant, through its manager, Bertke, amount to a menace as above defined? The circumstances that defendant demanded from plaintiff the immediate payment of $200 or it would send him to the penitentiary, that thereupon the plaintiff gave the defendant his check for the sum demanded for the purpose of avoiding prosecution and imprisonment, coupled with the further facts that the plaintiff strenuously contended that the total amount of his liability to the defendant for the gas which he had consumed did not exceed in value the sum of $10, and that after obtaining this money the defendant wholly refrained from instituting criminal proceedings against the plaintiff, would have justified the jury in coming to a conclusion that the defendant's threats to prosecute and imprison the plaintiff were not made for the mere purpose of calling to his attention the fact that he was liable to prosecution under the penal statutes of the state, but were made solely to compel the payment of a debt alleged to be due to the defendant from the plaintiff. If the defendant had actually caused the institution of criminal proceedings and the actual arrest and imprisonment of the plaintiff for such purpose, the arrest and imprisonment, so far as the defendant was concerned would have been unlawful, and so would have constituted duress under the statute above quoted, although as between the state and the plaintiff the arrest and imprisonment might have been lawful.

In *Richardson* v. *Duncan*, 3 N. H. 508, the court said: "It is now well settled, that when there is an arrest for improper purposes, without a just cause, or where there is an arrest for a just cause, and without lawful authority, or where there is an arrest for a just cause, and under lawful authority for unlawful purposes, it may be construed a duress."

In the case of *Heaton* v. *Norton County State Bank*, 5 Kan. App. 498, 47 Pac. 576, it is said: "While it has been held that

threats of imprisonment, to constitute duress, must be unlawful imprisonment, we think the question is, whether the threat is of imprisonment which will be unlawful in reference to the conduct of the threatener, who is seeking to obtain a contract by his threat. Imprisonment that is suffered through the execution of a threat which was made for the purpose of forcing a guilty person to enter into a contract may be lawful as against the authorities and the public, but unlawful as against the threatener, when considered with reference to his effort to use for his private benefit, processes provided for the protection of the public and the punishment of crimes. One who has overcome the mind and will of another for his own advantage, under such circumstances, is guilty of a perversion and abuse of the laws which were made for another purpose, and he is in no position to claim the advantage of a formal contract obtained in that way.'' To the same effect is the case of *Hargreaves* v. *Korcek*, 44 Neb. 660, 62 N. W. 1086.

"An arrest by a legal warrant on a criminal charge, to compel the satisfaction of a mere private civil demand, is a misuse of process, and fraud upon the law, and an illegal arrest as respects the party who knowingly and purposely perverts the machinery in that way.'' (*Heaton* v. *Norton County State Bank, supra,* citing *Sieber* v. *Price,* 26 Mich. 522; *Thompson* v. *Niggley,* 53 Kan. 664, 26 L. R. A. 803, 35 Pac. 296.)

In the case of *Hackett* v. *King,* 6 Allen (Mass.), 58, the trial court instructed the jury: ''If the plaintiff was arrested under a legal warrant and by a proper officer, yet if one of the objects of the arrest was thereby to extort money or property from him, or to enforce the settlement of a civil claim, such arrest would be a false imprisonment by all who directly or indirectly procured the same or participated therein for any such purpose.'' Upon appeal the supreme court held such instruction correctly stated the law.

The fact conditions in *Bullard* v. *Smith,* 28 Mont. 387, 72 Pac. 761, cited and relied upon by defendant, are so different

from those here presented as to render that case of no controlling effect in this case.

The foregoing authorities fully sustain the proposition that even a lawful imprisonment for an unlawful purpose will constitute duress, and therefore the threat of imprisonment for such purpose constitutes menace under the Code sections above cited. Since the testimony on the part of the plaintiff would have justified a finding that the object of the threatened imprisonment was for such unlawful purpose, the case should have been submitted to the jury.

Defendant further contends that, since the plaintiff's testimony shows the $200 was paid to suppress a criminal [4] prosecution, it cannot be recovered. The general rule is that money paid on an agreement to suppress a threatened criminal prosecution cannot be recovered, because, this being an illegal agreement, the law will not aid either party thereto; it leaves the parties where it finds them.

*In pari delicto potior est conditio defendentis.* (13 C. J. 492.) This rule, however, is subject to the qualification that, if the payment has been induced by duress, menace, or oppression, it can be recovered, for the reason that the parties to the agreement in such circumstances are not *in pari delicto.* (13 C. J. 498; *Wilbur* v. *Blanchard,* 22 Idaho, 517, 126 Pac. 1069. See, also, cases collected in note at page 43 of L. R. A. 1918C.)

The case of *Union Exchange Nat. Bank.* v. *Joseph,* 231 N. Y. 250, 17 A. L. R. 323, 131 N. E. 905, cited by counsel for defendant, is not in accord with the principle announced in the foregoing qualification to the general rule; but this case is clearly not in accord with the great majority of the authorities, and the reasons given to sustain the same, which, in addition to holding that the parties are not *in pari delicto,* also hold that it would be contrary to public policy to permit the oppressor to retain the results of his wrongful act.

The judgment is reversed and the cause remanded to the district court of Cascade county for further proceedings.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and GALEN concur.