PORTLAND   CATTLE   LOAN   CO.,   APPELLANT,   *v.*
FEATHERLY ET AL., RESPONDENTS.

(No. 5,746.)

(Submitted October 27, 1925.   Decided November 20, 1925.)

[241 Pac. 322.]

*Duress per Minas—Mortgages—When Void—Obtaining Security for Debt by Threats—Waiver—Ratification—Pleading—Contracts—Suppression of Investigation of Criminal Offense—Public Policy—Appeal and Error.*

Duress—Mortgages—Invalidity.
  1.   The validity of a mortgage may be impeached and foreclosure prevented if its execution was procured by duress practiced by the mortgagee upon the mortgagor.

Same—Debtor and Creditor—Obtaining Security by Threat of Criminal Proceedings.

2. A creditor has no right to make use of criminal process to obtain security for his debt, and a threat to do so constitutes duress if the threat produced fear which overcame the will-power of the debtor and of members of his family who joined in the mortgage.

Same—Threat of Criminal Proceedings—When Contract Void.

3. The nature of a threat made by a creditor to bring a criminal charge against his debtor for the purpose of compelling him and the members of his family to join in a mortgage to secure the debt is not so material as the state of mind produced in them, and if they were impelled to its execution by the fear engendered by the threat alone, it is immaterial whether the debtor was guilty or innocent of any offense; in either event the mortgage is void on the ground of duress.

Same—What Constitutes.

4. The law does not fix any standard of resistance to which a person must attain to entitle him to be relieved of a contract on the ground of duress; if he was oppressed by threats directed against himself or a member of his family which deprive him of the free exercise of will-power the contract is void.

Same—Threat of Criminal Prosecution—Evidence Held not to Show Improbability of Threat Having Caused Fear in Mind of Party Threatened.

5. Where a borrower in executing a chattel mortgage upon a large number of cattle had represented to the mortgagee that he owned and was giving security upon some two or three hundred head more than he owned, the fact that he was a mature man, of extensive business experience, prominent in public life and world-wise, was not alone sufficient to render it improbable that, when the mortgagee upon discovery of the fraud threatened him with criminal prosecution in an effort to induce him and members of his family to consent to the execution of a mortgage upon a ranch as further security for the loan, the threat was the inducing cause for its execution, in view of the further fact that his attorney advised him to comply with the demand to avoid prosecution.

Same—Probable Effect of Threat—Matters Proper to be Considered.

6. In a foreclosure proceeding in which the defense was duress, matters such as that the mortgagors negotiated for a reduction of the amount of the indebtedness before the mortgage was delivered, that there was no representative of plaintiff loan company present when it was signed, *etc.*, while proper to be considered in determining the probable effect of alleged threats, were not conclusive as showing that they had not been made.

Same—Waiver—Ratification—Pleading.

7. Neither waiver nor ratification having been pleaded, plaintiff mortgagee was not in a position to rely upon the fact that nine

---

2. What constitutes duress, see note in 26 **Am. Dec.** 374. See, also, 9 **R. C. L.** 718.

3. Innocence of person threatened as affecting rights or remedies in respect to contracts made, or money paid, to prevent or suppress a criminal prosecution, see note in 7 **A. L. R.** 325. See, also, 9 **R. C. L.** 719.

4. Contracts procured by threats of prosecution of a relative, see notes in Ann. Cas. 1917C, 1033; 26 **L. R. A.** 48; 20 **L. R. A.** (n. s.) 484; 37 **L. R. A.** (n. s.) 539; **L. R. A.** 1915D, 1118.

7. Ratification of contract procured by duress, see note in **Ann. Cas.** 1913E, 438.

months elapsed after the making of alleged threats to induce the execution of a mortgage sought to be avoided on the ground of duress, before it was delivered, except so far as it reflected upon the question whether it was executed and delivered under the impulse of fear alone.

Same—What not Defense.

8. Where a mortgage secured by threats was not delivered until nine months after the threats had been made, to entitle defendants to prevail on the ground of duress it was not incumbent upon them to show a repetition of the threats immediately before delivery, in the absence of any evidence that the threats had been retracted.

Same—Findings of Threats and Promise of Immunity not Inconsistent.

9. A finding that a mortgage was procured by threats and one that the consideration for it was the promise of immunity from a criminal prosecution, *held* not so inconsistent as to destroy each other.

Contracts to Suppress Investigation of Criminal Offense Void as Against Public Policy.

10. A contract which tends to suppress the investigation of a criminal offense is illegal, even though it does not amount to compounding of a felony, for the reason that it is contrary to good morals and public policy.

Appeal and Error—Error not Set Forth in Specifications of Error not Reviewable.

11. Error argued in appellant's brief but not set forth in the specifications of error is not entitled to review.

---

Appeal and Error, 3 C. J., sec. 1588, p. 1412, n. 54; 4 C. J., sec. 2869, p. 900, n. 96.

Contracts, 13 C. J., sec. 319, p. 402, n. 93, 94, 96; sec. 325, p. 404, n. 21; sec. 389, p. 449, n. 42.

Mortgages, 27 Cyc., p. 1123, n. 81, 82; p. 1611, n. 83; p. 1619, n. 56; p. 1641, n. 48.

*Appeal from District Court, Beaverhead County; Joseph C. Smith, Judge.*

SUIT by the Portland Cattle Loan Company against George R. Featherly and others. Judgment for defendants and plaintiff appeals. Affirmed.

*Mr. John Collins, Messrs. Carey & Kerr* and *Mr. Charles A. Hart,* the latter of the Bar of Portland, Oregon, for Appellant, submitted a brief, and one in reply to that of Respondents; *Mr. Collins* and *Mr. Hart* argued the cause.

A deed or mortgage acknowledged as the free act of the signer ordinarily cannot be set aside for duress when it

appears that the signer had ample time and opportunity for investigation, consideration, consultation and reflection. (*Clement* v. *Buckley Mercantile Co.*, 172 Mich. 243, 137 N. W. 657.) Particularly is this so when the record shows that the signer has had disinterested advice. (18 Corpus Juris, 235; *Rendleman* v. *Rendleman*, 156 Ill. 568, 41 N. E. 223; *Detroit Nat. Bank* v. *Blodgett*, 115 Mich. 160, 73 N. W. 120, 885.) The reason is obvious. As indicated by this court in *Averill M. Co.* v. *Taylor*, 70 Mont. 70, 223 Pac. 918, the question is one of contractual capacity; and it is difficult to understand how one who, after the alleged threats, has had abundant time to consider and reflect free from any influence from the other party, and who has had the benefit of disinterested advice, could possibly be said to have been bereft of his normal contractual capacity when he finally took action. (See, also, *Loud* v. *Hamilton* (Tenn. Ch. App.), 45 L. R. A. 400, 51 S. W. 140.)

The long delay in the enforcement of their rights now claimed is particularly significant in view of the fact that the defendants (in most instances) had the benefit of legal advice before deciding to sign the mortgage. It must be assumed that at the time of signing they knew their legal rights and their inactivity for four to five years thereafter shows almost conclusively that each understood no imposition had been practiced upon him. Indeed, under the authorities, if there ever was any taint of invalidity because of the alleged threats, it was removed by the ratification necessarily resulting from the long delay; and, too, by the payment on account made a month or more after Mr. and Mrs. Featherly (and three other defendants) signed the mortgage. (*Connolly* v. *Bouck*, 174 Fed. 312, 98 C. C. A. 184; *Andrews* v. *Connolly*, 145 Fed. 43; *Webb* v. *Lothrop*, 224 Mass. 103, 112 N. E. 934; *Loud* v. *Hamilton* (Tenn. Ch. App.), 45 L. R. A. 400, 51 S. W. 140; *Myers* v. *Grey*, 122 N. Y. Supp. 1079; *Guinn* v. *Sumpter Valley Ry. Co.*, 63 Or. 368, 127 Pac. 987.)

The second defense, that the mortgage was given pursuant to an agreement to compound a felony and is therefore in-

valid, requires little more than a statement of the elementary principles applicable. It will be recalled that the answers of the defendants do not allege that any felony had been committed by Mr. Featherly, Sr. No prosecution of any kind had been commenced, and the only evidence undertaking to explain the shortage of collateral was that given by Mr. Featherly himself, and this negatived any idea that any offense had been committed. After the commencement of a criminal prosecution, an agreement predicated upon its dismissal may be invalid even though it turns out that the accused was innocent and no basis for the prosecution existed. But where no prosecution of any kind has been begun, obviously the charge of compounding a felony must include pleading and proof that the offense was actually committed. (13 Corpus Juris, 454; *Columbia Lodge* v. *Manning,* 57 N. J. Eq. 338, 38 Atl. 444; *Woodham* v. *Allen,* 130 Cal. 194, 62 Pac. 398.)

*Messrs. Gilbert, Gilbert & McFadden,* for Respondents, submitted a brief; *Mr. F. E. Gilbert* and *Mr. Theo. F. McFadden* argued the cause orally.

Citing on the question of duress: *Sylvan Mortgage Co.* v. *Stadler,* 113 Misc. Rep. 659, 185 N. Y. Supp. 293, at page 299; *Averill Machinery Co.* v. *Taylor,* 70 Mont. 70, 223 Pac. 918; *Eureka Bank* v. *Bay,* 90 Kan. 506, 135 Pac. 584; *State Bank* v. *Hutchinson,* 62 Kan. 9, 61 Pac. 443; *Schultz* v. *Catlin,* 78 Wis. 611, 47 N. W. 946.

In their second defense the defendants alleged that the note and mortgage are null and void, in that the same were given pursuant to a contract to suppress a criminal prosecution. Appellant takes the position that, as no criminal proceedings were pending at the time the note and mortgage were given, it was incumbent upon the defendants to prove that Featherly, Sr., had in fact committed an offense; and failing in this, the defendants did not establish the defense pleaded. The current weight of authority is to the effect that the guilt

or innocence of the accused is immaterial, even where no criminal proceedings are pending, at the time the obligation sued upon was given; so that in the case at bar it was not incumbent upon the defendants to establish the commission of an offense.   (See 13 C. J. 454; 17 A. L. R. 325; *Union Exchange Nat. Bank* v. *Joseph,* 231 N. Y. 250, 131 N. E. 905; *Pendleton* v. *Greever,* 80 Okl. 35, 193 Pac. 885; *Garner* v. *Qualls,* 49 N. C. 221; *Crowder* v. *Reed,* 80 Ind. 1; *Koons* v. *Vancousant,* 129 Mich. 260, 95 Am. St. Rep. 438, 88 N. W. 630; *Beale-Doyle Dry Goods Co.* v. *Barton,* 80 Ark. 326, 97 S. W. 58; *Commercial Credit Co.* v. *Fry,* 31 Ga. App. 488, 122 S. E. 77.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

At the times mentioned herein the "Stodden" ranch in Beaverhead county was owned as follows: A life estate in Nancy A. Mauldin, mother of George R. Featherly; after her death a life estate in George R. Featherly, and a like estate in Louise Featherly, and the remainder in fee in the children of George R. Featherly and Louise Featherly.

H. B. Duff, an attorney at Dillon, was the local representative of the Portland Cattle Loan Company (hereinafter called the company), an Oregon corporation engaged extensively in loaning money in Montana and other northwestern states.   W. P. Dickey, of Portland, Oregon, was president of the company, and Charles H. Carey, also of Portland, was a director of and general counsel for the company.

On September 17, 1917, George R. Featherly and Louise Featherly executed and delivered to the company their promissory note for $23,972.67 due in five years, with interest at the rate of six per cent per annum, and within a few days thereafter a mortgage upon the "Stodden" ranch to secure payment of the debt represented by the note was prepared, and this mortgage was signed and acknowledged by Nancy A. Mauldin, George R. Featherly, Louise Featherly, George R. Featherly, Jr., and his wife on September 20, 1917; by William J.

Featherly and his wife, and by Cecil M. Featherly and Walter Featherly, on October 23, 1917; by Nancy Featherly White and her husband on November 9, 1917; by Georgia Featherly Hendrick and her husband on March 12, 1918, and by Fred E. Featherly and Albert R. Featherly on May 3, 1918. The mortgage was delivered to the company, and was duly recorded on June 25, 1918.

This action was instituted to foreclose the mortgage, and in the complaint it is alleged that only $6,000 had been paid upon the indebtedness. In the meantime Mrs. Mauldin died, and, though the executor of her last will was made a defendant in the first instance, the action was dismissed as to him.

Answers were filed in which the execution and delivery of the note and mortgage were admitted and two affirmative defenses interposed: (a) That the mortgage was procured to be signed and delivered by duress practiced upon each of the individual signers by the company; and (b) that the consideration for signing and delivering the mortgage was the promise of the company to forego prosecuting George R. Featherly for the commission of a crime. The facts constituting each of these defenses will appear from the discussion of the evidence, and need not be repeated here.

The trial of the cause to the court with an advisory jury resulted in findings supporting each of the affirmative defenses, a personal judgment against George R. Featherly for the amount demanded, and a judgment dismissing the complaint as to all other defendants. From that judgment the company appealed.

It may be said fairly that the following facts appear from the testimony: From 1911 George R. Featherly had business transactions with the company, and in 1916 was indebted to the company in a large amount secured by a chattel mortgage upon cattle. In executing that chattel mortgage Featherly knowingly included 200 head of cattle or more which he did not own and did not have any right to mortgage. When the company undertook to realize on the security it discovered the fraud, and, when it sold the cattle available and applied

the proceeds, there still remained a balance of approximately $24,000 for which it did not have any security, and Featherly was then insolvent. Thereupon Duff, acting for the company, sought to obtain security for the balance, and during the early months of 1917 discussed with Featherly the matter of securing a mortgage upon the "Stodden" ranch. The company also obtained the services of former Governor White in this behalf, but all to no purpose, for the members of the Featherly family refused to give the mortgage, and Duff so advised the company. Later Mr. Malone, the treasurer of the company, came to Beaverhead county, and he and Duff sought to obtain a mortgage on the ranch, but without success. Mr. Dickey also wrote to Featherly concerning the same matter, but Featherly did not answer the letter. Later Duff informed Featherly that he was directed by the company to commence a civil action and reduce the balance to judgment, and thereupon Featherly wrote to the company and in his letter said: "I have had a talk with Mr. Duff, who informs me that he has been instructed to proceed against me. I have no other security to offer than my notes, and I will inform you that you will get your money just as soon on these notes and perhaps a great deal sooner than you will by process of law, because I haven't anything that can be attached, my interest in the estate does not begin until my mother dies, and I am not looking for that for quite a while yet," *etc.*

Later Duff applied to the county attorney of Beaverhead county for assistance. He represented that Featherly was subject to prosecution for obtaining money under false pretenses in connection with the chattel mortgage, and requested the officer to write to Featherly to the effect that the company had applied for a warrant for his arrest, and, unless the matter was adjusted, he would be prosecuted. The county attorney refused, and a week or ten days later Duff applied for a warrant for Featherly's arrest, but failed to secure it. Thereafter Mr. Dickey and Mr. Carey came to Dillon from Portland, and during the forenoon of September 15, 1917, with Mr. Duff, went to the Featherly ranch. They found Featherly at work in the

field, and informed him that they were there to "straighten up" the balance of the cattle debt. Featherly informed them that he did not have any means of straightening it up; that he did not have any money with which to pay them. Mr. Carey, acting as spokesman, then said that they had come out there to straighten the business up that day, and intimated that Featherly had committed a crime in connection with the chattel mortgage. Carey suggested this mortgage upon the "Stodden" ranch, and said "that was the way it had to be settled." Featherly replied that it could not be done; that he did not own the ranch; and after some further colloquy said that he would have to consult his wife. They proceeded to the Featherly home, and Featherly, Dickey and Carey entered the house. Mr. Carey then informed Mrs. Featherly that her husband had committed a crime, and, unless steps were taken to fix it up, he would be prosecuted and likely sent to the penitentiary. He suggested that giving the mortgage upon the "Stodden" ranch and securing its execution by all those interested was the only way it could be settled, but, if this were done, Featherly would not be prosecuted. When Mrs. Featherly objected to giving the mortgage, Mr. Carey informed her that she was a heartless wife who would not "sign over" everything she possessed to save her husband from the penitentiary.

Under these circumstances Featherly and his wife consented, but before anything further was done Featherly went to his attorney in Dillon, explained the circumstances, and was advised that the best thing to do to prevent the prosecution "was to go ahead and have this mortgage prepared and signed." This advice Featherly communicated to his wife, and on September 20, when the mortgage had been prepared, it was signed and acknowledged by Mrs. Mauldin, Mr. and Mrs. Featherly and by George R. Featherly, Jr., and his wife, and later by the other children as indicated above.

Featherly testified that he believed that the company would prosecute him if he did not give the mortgage, and that he executed it only because of fear of prosecution if he refused. Mrs. Featherly testified that she was not familiar with the

transactions between her husband and the company; that she was stunned by the accusation made against her husband; believed that the threat of prosecution would be carried into effect if the demand was not met; and that she signed the note and mortgage "to save my husband from prosecution" and would not have executed them otherwise.

Cecil Featherly testified that he was present and heard the conversation in the field, and also the one in the house, and that he executed the mortgage only "because those gentlemen had threatened my father with a term in the penitentiary if the mortgage was not executed."

Each of the other signers (except Mr. and Mrs. White, who lived in California and did not testify) testified that George R. Featherly, or Mrs. Featherly, communicated to him, or her, the threats so made and the promise of immunity so given, and that he, or she, executed the mortgage only because of fear that the threat would be carried into execution if it were not done.

While George R. Featherly admitted that he owed the company the full amount represented by the note, it is conceded that no one of the other signers was indebted to the company at all or under any obligation to secure the debt.

Carey, Dickey and Duff denied that any threat whatever was made or any promise of immunity given at the conversation in the field, and Carey and Dickey likewise denied that any threat or reference to criminal prosecution or any suggestion of immunity was made in the house. Duff also denied that he sought the county attorney's aid to obtain security for the debt.

The trial court found that Carey, Dickey and Duff, as representatives of the company, did "accuse and represent to the defendant, George R. Featherly, Sr., and to the defendant Louise Featherly, his wife, and in the presence of the defendant Cecil M. Featherly, his son, that he, the said defendant George R. Featherly, Sr., was guilty of a felony in relation to the neat cattle so mortgaged by said chattel mortgage as aforesaid, to-wit, obtaining money under false pretenses or embezzlement or both of said crimes," and that they did "threaten to

immediately cause the arrest of said defendant George R. Featherly, Sr., and to institute a criminal action against him charging him with a felony, to-wit, obtaining money under false pretenses or embezzlement, or both of said crimes, and to prosecute such criminal action to the end that the said defendant would be confined and imprisoned in the penitentiary unless the mortgage was procured to be executed by those interested in the ranch, and that, in consideration of the execution and delivery to plaintiff of the said note and mortgage, in the manner and form aforesaid, agreed that plaintiff would not cause the arrest, prosecution and imprisonment of the said George R. Featherly, Sr., upon a felony charge as aforesaid.'' There was not any objection made to any of these findings in the court below, and error is not predicated upon any of them in this court.

The court also found that the mortgage was executed by each of the defendants, except Mr. and Mrs. White, because of the fear produced by the threat, and that alone, and that no one of them would ''have consented to or signed said mortgage in the absence of the aforesaid accusation and threats against said defendant George R. Featherly, Sr.''

The court concluded that the mortgage was obtained by duress, and that it was ''executed and delivered in consideration of an agreement and contract which was and is contrary to public policy.''

Counsel for the company recognize the rule which prevails in [1] this jurisdiction that upon an appeal in an equity case this court will not disturb findings within the issues unless the evidence preponderates against them (*Security State Bank* v. *McIntyre*, 71 Mont. 186, 228 Pac. 618; *Warren* v. *Senecal*, 71 Mont. 210, 228 Pac. 71), but nevertheless insist that this judgment should be reversed and plaintiff awarded the relief it demanded. In other words, the question is not whether the evidence preponderates against the findings, but whether, assuming the testimony given by the defendants to be true, it is sufficient to sustain either of the defenses pleaded.

The rules by which this case is to be determined are settled by the recent decisions of this court. (*Williams* v. *Thomas,* 58 Mont. 576, 194 Pac. 500; *Clifford* v. *Great Falls Gas Co.,* 68 Mont. 300, 216 Pac. 1114; *Averill Machinery Co.* v. *Taylor,* 70 Mont. 70, 223 Pac. 918.)    As applied to this case, those rules may be stated as follows:

1. The validity of the mortgage may be impeached and fore-[2–4]    closure prevented if the execution of the mortgage were procured by duress practiced by the company upon the defendants, the mortgagors.

2. Although George R. Featherly was indebted to the company in a large amount and was insolvent, the company did not have any right to make use of criminal process to obtain security for the debt, and a threat to do so would constitute duress, if the threat produced fear which overcame the will power of the mortgagors.

3. A threat to prosecute George R. Featherly for a crime would constitute duress as to each of the mortgagors if each one were deprived of the free exercise of will-power by the fear engendered by the threat, and executed the mortgage under the impulse of that fear alone.

4. The nature of the threat is not so material as is the state of mind produced in the victims; hence, if in executing the mortgage each of the mortgagors was impelled by the fear alone, it is altogether immaterial whether George R. Featherly was guilty of the offense charged or of any offense, for there was then absent the indispensable element—consent given freely.

5. The law does not fix any standard of resistance to which these defendants were required to attain at the peril of being remediless for the wrong done them.

In amplification of this last rule it may be said that anciently duress *per minas* existed only when the threat was deemed sufficient to deprive a constant or courageous man of the exercise of free will and the circumstances required to produce that result were fairly well fixed in the law. Later the legal standard of resistance was changed, and fear sufficient to overcome the will-power of a man of ordinary firmness was held

to be sufficient. In modern times the standard of the mythical man, constant or courageous, or of ordinary firmness, has been abandoned, and the decided weight of authority and the better reasoned cases now adhere to the rule that a contract obtained by oppressing a person by threats directed against him or a member of his family which deprives him of the free exercise of his will may be avoided on the ground of duress. (9 R. C. L. 714–717.) In other words, the standard recognized by these authorities is the resisting power of the individual affected; hence, as said by this court in *Averill Machinery Co.* v. *Taylor,* above: "The age, relationship, mental capacity and experience of the defendants were proper subjects of inquiry, to the end that the court and jury might be able to determine whether they were merely feigning fear or were so far bereft of reason as to be unable to exercise freedom of will."

As tending to indicate the improbability that the threat was [5] the inducing cause the contract—*causa sine qua non*—counsel for the company remind us that George R. Featherly had been engaged in business extensively for many years; that he was a member of the state senate, a man of mature judgment, broad experience, and was world-wise; and, they say, innocent of any crime in connection with the chattel mortgage; hence they argue that it is unreasonable that he should have been panic-stricken by the threat made against him. But the record discloses that, notwithstanding his extensive business operations in times past, he was then insolvent and indebted to the company to the extent of $24,000 in round numbers; that in executing the chattel mortgage he had knowingly represented that he owned and was giving security upon many more cattle than he had; that this false representation had been made by him "to have a better looking paper"; and that he knew that the fraud had been discovered by the company. The trial court found that from 200 to 300 cattle had been included in the chattel mortgage which Featherly did not own and which he knew he did not own when he executed that mortgage.

We need not stop to consider whether he was, in fact, guilty of a crime. If he were conscious of the wrong done by him, as

he must have been, and if he were uncertain in his own mind, as well he might have been, whether sufficient evidence was not available to sustain a conviction if he were prosecuted for a felony, then the fact of his prominence in the political affairs of the state and his consideration for his aged mother, his wife and his children might naturally excite the gravest fears and the most serious apprehension of the consequences to follow a prosecution. Under these circumstances it does not appear to us unreasonable that he should have been terror-stricken to the point of mental aberration.

Counsel for the company also stress the fact that he sought and obtained legal advice, and in their brief they say: "Presumably he was advised * * * that he had nothing to fear from the threatened prosecution." It is true that he sought the advice of his counsel immediately, but the only fair inference from his testimony is that he made a complete disclosure of the facts in connection with the giving of the chattel mortgage, and he was advised that, if he wished to avoid the threatened prosecution, the best thing for him to do was to have the mortgage prepared and executed. It cannot be urged that this advice would tend to allay his fear; on the contrary, its natural tendency would be to intensify it to the extent that he reposed confidence in the ability of his counsel.

Again it is contended that, after the threat was made, but [6] before the mortgage was delivered, the mortgagors negotiated for a reduction of the amount of the indebtedness. It appears that on September 15, 1917, after the meeting at the Featherly home, Featherly, Dickey, Carey and Duff met with Featherly's attorney to arrange the terms of the mortgage, and it was then agreed orally that, if Featherly would apply to the indebtedness the proceeds from the ranch for 1917, he should receive double credit. The letter to which reference is made was written with the apparent purpose of securing an acknowledgment in writing of the agreement so made. It is true, also, that on June 25, 1918, Featherly made an affidavit to be attached to the mortgage before it was delivered, identifying some of the mortgagors who had used their initials in signing,

and it is equally true that there was not any representative of the company present when any one of the mortgagors signed. These are circumstances properly to be considered in determining the probable effect of the threat, but no one of them is, nor are all of them collectively, conclusive of the matter.

Every case of this character is decided upon its own peculiar facts, and with most of the authorities cited by counsel for the company we agree. Upon the same facts we would doubtless reach the same conclusion as was reached in *Loud* v. *Hamilton* (Tenn. Ch. App.), 45 L. R. A. 400, 51 S. W. 140, *Detroit Nat. Bank* v. *Blodgett,* 115 Mich. 160, 73 N. W. 120, or *Clement* v. *Buckley Merc. Co.,* 172 Mich. 243, 137 N. W. 657. But the facts in each of those cases differ widely from the facts now before us.

We are not disposed to follow the Illinois cases to the conclusions reached, for the rule enforced in Illinois is much more stringent than the rule we have adopted in this state.

Reference is made also to the decision in *Bullard* v. *Smith,* 28 Mont. 387, 72 Pac. 761. In that case Smith pleaded duress as a defense to an action on a promissory note, but failed to prove it; on the contrary, his own testimony disclosed that he did not have anything to fear from the threats made against him; that the threats did not disturb him; and that at the time he signed the note he "was not in fear."

If this mortgage had been executed and delivered immediately upon the threat being made, it could not be contended seriously that the defense of duress is not established. But emphasis is laid upon the fact that nine months elapsed after the threat [7] was made, before the mortgage was delivered. Neither waiver nor ratification was pleaded, though the opportunity to plead either or both was present; hence the company may not rely upon the delay (*Smith* v. *Barnes,* 51 Mont. 202, Ann. Cas. 1917D, 330, 149 Pac. 963), except so far as it reflects upon the question whether the mortgage was executed and delivered under the impulse of the fear alone.

As indicated above, the mortgage was executed by Mrs. Mauldin, George R. Featherly, Mrs. Featherly, George R.

Featherly, Jr., and his wife on September 20—apparently as soon as it was prepared and ready to be signed. Mrs. White and her husband lived in California, and Mrs. Hendrick and her husband in the state of Washington. Their signatures were obtained through correspondence, and the delay which ensued after Mrs. Hendrick first received the mortgage is explained fully. The only unexplained delay is that between May 3 and June 25, 1918. George R. Featherly testified that he delivered the mortgage, or caused it to be delivered, only because in June, 1918, he believed that the threat to prosecute him would be carried into effect if he did not conform to the agreement made in September, 1917, and, in view of the efforts put forth by the company to secure the mortgage, we are not prepared to say that his story is so unreasonable as to be unbelievable.

Duff, the local representative, had exhausted every means at his command to obtain this mortgage, his efforts extending over a period of several months. The influence of former Governor White had been enlisted, but all to no purpose. Mr. Malone, the treasurer of the company, had come on from Portland, had used his persuasive influence, and had failed. Mr. Dickey, the president, had sought to obtain the same result by correspondence, but without success. As a last resort Mr. Dickey and Mr. Carey came to the Featherly home, and, by threatening prosecution, obtained the promise that the mortgage would be given. Under these circumstances it cannot be presumed that the effect produced by the threat would disappear as soon as the threat was made.

It was not necessary for the defendants to show that the [8] threat had been repeated immediately before the mortgage was delivered. It had been made to secure the mortgage, and, so far as disclosed by the record, had not been retracted. (*Taylor* v. *Jaques,* 106 Mass. 291.)

In *Eureka Bank* v. *Bay,* 90 Kan. 506, 135 Pac. 584, the court had under consideration the same question which now confronts us, and in disposing of it said: "There is no basis in law or in human experience for asserting that the fear engendered by the plaintiff's threats vanished the moment the instruments wrung

[74 Mont. 531.]

from the defendants were executed. The presumption is that the influence of such threats continued, and there is no evidence from which it can be inferred that the defendants were relieved of their apprehension within less than two months after they were placed in the jaws of the mental vise manipulated by the plaintiff's agent.''

Finally it is suggested that the finding that the mortgage was [9] secured by the threat and the finding that the consideration for the mortgage was the promise of immunity are so inconsistent as to destroy each other. But counsel do not refer to any authority to sustain this contention, and we have not been able to find any. On the contrary, many courts have held that the promise of immunity is a constituent of duress; in other words, that the threat to prosecute without a promise to forego prosecution in the event the purpose is accomplished does not constitute duress. (*Miller* v. *Minor Lumber Co.*, 98 Mich. 163, 39 Am. St. Rep. 524, 57 N. W. 101; *Cass County Bank* v. *Bicker*, 34 Neb. 516, 33 Am. St. Rep. 649, 52 N. W. 575; *Moyer* v. *Dodson*, 212 Pa. 344, 61 Atl. 937.) We are not called upon to adhere to the doctrine of these cases thus broadly stated; but we do hold that the findings made by the trial court are not inconsistent.

Authorities are cited which hold that to constitute compounding [10] a felony there must be a pending prosecution or it must appear that a felony has been committed at the time forbearance is promised. Whether the facts relied upon by these defendants constitute compounding a crime within the technical meaning of that term (sec. 10931, Rev. Codes) is not very material. Section 7505 declares: ''The consideration of a contract must be lawful within the meaning of section 7553.'' And section 7553 provides: ''That is not lawful which is: 1. Contrary to an express provision of law; 2. Contrary to the policy of express law, though not expressly prohibited; or, 3. Otherwise contrary to good morals.''

The authorities quite generally agree that a contract which tends to suppress the investigation of a criminal offense is illegal, even though it does not amount to compounding a

crime, and this for the reason that such a contract is contrary to good morals and public policy. (13 C. J. 449; 17 A. L. R. 326.) The rule is stated concisely in 2 Page on the Law of Contracts, section 919, as follows: "Criminal prosecutions should be instituted, conducted or dismissed, as the case may be, solely for the good of organized society and not for the private gain of prosecuting witnesses, prosecuting attorneys, or third persons. Accordingly, a contract by which A. agrees to pay B. a thing of value, in consideration that B. will refrain from instituting a criminal proceeding or will dismiss a criminal proceeding which has already been instituted, and which is entered into for the private gain of the promisee, is illegal. Such a contract is invalid although the accused is not under arrest. The fact that the accused is not guilty of the crime does not render such contract valid."

In their brief counsel for the company say: "The court erred [11] in finding that defendants Nancy Featherly White and husband executed the mortgage because of duress or because of the alleged threats made by representatives of plaintiff." The court did not make any such finding. It did dismiss the complaint as to Mr. and Mrs. White, although they did not produce any evidence in support of the defenses interposed by them, but error is not predicated upon this action of the court, and the matter will not be considered on appeal. (*Rogness* v. *Northern Pac. Ry. Co.*, 59 Mont. 373, 196 Pac. 989; *Toole* v. *Weirick*, 39 Mont. 359, 133 Am. St. Rep. 576, 102 Pac. 590; *Schilling* v. *Curran*, 30 Mont. 370, 76 Pac. 998.)

We think the evidence is sufficient to justify the findings, and accordingly the judgment is affirmed.

*Affirmed.*

Mr. Chief Justice Callaway and Associate Justices Galen, Stark and Matthews concur.