DA 11-0290

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2011 MT 315

GARY L. FRONK, AND CRYSTAL J. FRONK,

      Plaintiffs and Appellees,

  v.

DAVID W. COLLINS, DIANNE J. COLLINS,
73 RANCH, 73 RANCH LLC, et al.

      Defendants and Appellants.

APPEAL FROM:    District Court of the Tenth Judicial District,
                In and For the County of Petroleum, Cause No. DV 07-08
                Honorable E. Wayne Phillips, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

      Allen Beck; Attorney at Law; Lewistown, Montana

      For Appellees:

      Page C. Dringman; Dringman Law Firm, PLLC; Big Timber, Montana

                    Submitted on Briefs:  October 19, 2011

                            Decided:  December 20, 2011

Filed:

                  _____
                            Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     The Tenth Judicial District Court, Petroleum County, granted summary judgment to Plaintiffs Gary and Crystal Fronk (Fronks) enforcing an agreement entered with Defendants David and Dianne Collins (Collins), 73 Ranch, and 73 Ranch LLC. Defendants appeal. We affirm.

¶2     *Did the District Court err by granting summary judgment to Fronks?*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3     According to affidavits, exhibits, and other documents filed with the District Court, Fronks and Collins met in 2001 through mutual friends. Fronks, residents of Pennsylvania, were interested in purchasing property in Montana and acquiring horses. In 2002, Fronks purchased two pieces of Petroleum County property, the Fox and Dunn Ridge properties, from Collins for $95,000. Fronks and Collins entered into an oral agreement whereby Collins would acquire horses on behalf of Fronks, and Collins would be entitled to keep the first foal from each mare as payment for their services. The horses were to be run on 73 Ranch property. Fronks thereafter transferred around $215,000 to Collins for the acquisition of horses.

¶4     In 2004, Collins informed Fronks that they and 73 Ranch were having financial difficulties and needed additional resources to complete a cattle deal. Collins asked Fronks to deed back the two Petroleum County properties for use as collateral for the

cattle deal, and assured Fronks the properties would not be at risk. Fronks deeded the properties to Collins, with the understanding that Collins would reconvey the land, free of encumbrances, back to Fronks within five years.

¶5　Subsequently, Fronks discovered unauthorized sales and trades allegedly made by Collins, leading to dissension between the parties. From December 2005 to April of 2006, Fronks exchanged correspondence directly with Collins in an effort to resolve the dispute. The parties did not come to an agreement, so Fronks and Collins retained counsel. In early 2007, Fronks' counsel sent a letter to Collins' then-counsel indicating they needed to meet to settle the matter, or Fronks would pursue a civil action and ask the county to pursue criminal charges against Collins.

¶6　On February 22, 2007, the parties met in the office of Collins' counsel for the purpose of attempting to settle their dispute, with Fronks participating via conference call. All parties were represented by counsel, and signed a handwritten "Memorandum of Agreement," (Agreement) which resulted from their discussions. The Agreement addressed several key issues, including the ownership and transfer of the Fox and Dunn Ridge properties. At the time of the meeting, Collins had sold the Dunn Ridge property to a third party, so the parties agreed that Collins owed Fronks $65,000 for this property. Regarding the Fox property, the Agreement noted that the property would serve as collateral on Collins' cattle deal for three more years and Collins would thus execute a second mortgage on the property to Fronks for the property's full value. Upon repayment

of Collins' debt, Collins was to transfer the Fox property by warranty deed back to Fronks. The Agreement noted that Fronks were to be reimbursed $215,000 for the money they had transferred to Collins for purchase of horses. The Agreement also indicated that the total sum owed for the Dunn Ridge land and horses was $280,000, which would accrue 10% interest until paid in full. The Agreement concluded: "The parties agree to diligently execute a final agreement encompassing this handwritten agreement, security interests, mortgage and other required documentation to effectuate their settlement. . . . Fronks and Collins agree that this Agreement and related documents resolves [sic] the disputes between them."

¶7 When Collins did not comply with the Agreement, Fronks brought an action in December 2007 for breach of contract, breach of implied covenant of good faith and fair dealing, and misrepresentation. They sought, inter alia, to enforce the Agreement and recover damages, obtain ownership of the real property, and recover attorney fees. Fronks filed a *lis pendens* on the Fox property. In February of 2008, Fronks moved for summary judgment on the enforceability of the Agreement. When Collins did not respond, the District Court granted Fronks' motion, but thereafter Collins moved for relief from the judgment, which the District Court granted. Fronks then discovered that Collins had quitclaimed the Fox property to their newly formed 73 Ranch LLC, and later, to a third party referenced generally in the Agreement. Consequently, Fronks amended their complaint, naming the LLC as a party. Fronks filed a renewed motion for summary

4

judgment in October, 2010. After briefing and a hearing, the District Court determined that the Agreement was a valid, enforceable contract and granted summary judgment to Fronks.

**STANDARD OF REVIEW**

¶8 "We review appeals from summary judgment *de novo*, and determine whether there is an absence of genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law." *Bar OK Ranch, Co. v. Ehlert*, 2002 MT 12, ¶ 31, 308 Mont. 140, 40 P.3d 378 (citation omitted). If the moving party satisfies its burden of proof in demonstrating an absence of genuine issues of material fact and its entitlement to judgment as a matter of law, then the non-moving party must provide substantial and material evidence to raise a genuine issue of material fact. *See Hiebert v. Cascade Co.*, 2002 MT 233, ¶¶ 20-21, 311 Mont. 471, 56 P.3d 848 (citation omitted).

**DISCUSSION**

¶9 *Did the District Court err by granting summary judgment to Fronks?*

¶10 In the summary of argument section of their brief, Collins offer a statement to the effect that the Agreement was only a "roadmap for further negotiations" instead of an enforceable contract. However, Collins fail to further argue this point or to cite to any supporting authority. M. R. App. P. 12(1)(f) requires a party to cite to relevant authorities and statutes in support of an argument on appeal. *State v. Cybulski*, 2009 MT 70, ¶ 13, 349 Mont. 429, 204 P.3d 7. "We have repeatedly held that it is not this Court's

obligation to conduct legal research on behalf of a party or to develop legal analysis that might support a party's position." *State v. Gunderson*, 2010 MT 166, ¶ 12, 357 Mont. 142, 237 P.3d 74 (citing *Cybulski*, ¶ 13). Consequently, because no argument is developed for this issue, we decline to consider it further.

¶11 Collins also argue they were "induced to execute the [Agreement] because of the unlawful threat of criminal prosecution," which invalidated the Agreement due to an absence of valid consent.

¶12 A contract needs four elements for its existence: identifiable parties capable of contracting, the parties' consent, a lawful object, and sufficient cause or consideration. Section 28-2-102, MCA; *AAA Constr. of Missoula, LLC v. Choice Land Corp.*, 2011 MT 262, ¶ 19, 362 Mont. 264, ___ P.3d ___ (citation omitted). The issue in this appeal pertains to consent. The parties' consent must be free, mutual, and communicated by each to the other. Section 28-2-301, MCA; *In re Estate of Kindsfather*, 2005 MT 51, ¶ 31, 326 Mont. 192, 108 P.3d 487. A party's apparent consent is not free or real if obtained through, inter alia, duress or menace. Section 28-2-401(1)(a)-(b), MCA; *see also* § 28-2-1711(1), MCA (2005) ("A party to a contract may rescind the same . . . if the consent of the party rescinding or of any party jointly contracting with him was . . . obtained through duress, menace . . . ."). Duress consists of:

> (1) unlawful confinement of the person of the party . . .;
> (2) unlawful detention of the property of any such person; or
> (3) confinement of such person, lawful in form but fraudulently obtained or fraudulently made unjustly harassing or oppressive.

6

Section 28-2-402, MCA; *Matthews v. Berryman*, 196 Mont. 49, 52-53, 637 P.2d 822, 824 (1981). Menace consists of "a threat of: (1) such duress as is specified in subsections (1) and (3) of 28-2-402; . . . (3) injury to the character of any such person." Section 28-2-403(1), (3), MCA.

¶13 Collins' argument relies on two Montana cases. In *Clifford v. Great Falls Gas Co.*, 68 Mont. 300, 216 P. 1114 (1923), the plaintiff appealed the district court's judgment in favor of defendant's motion for nonsuit. Plaintiff inserted a make-shift device to use defendant's gas without allowing the gas to pass through the meter. *Clifford*, 68 Mont. at 304, 216 P. at 1114-15. Subsequently, the building caught on fire and upon review of the matter, the manager of defendant gas company told the plaintiff, "'You are stealing gas. I will send you over the road to the penitentiary.'" *Clifford*, 68 Mont. at 304, 216 P. at 1115. The manager wanted $200 for the gas consumed, although the plaintiff indicated that he could not have used more than $10 worth of gas. *Clifford*, 68 Mont. at 304, 216 P. at 1115. Plaintiff testified that he was scared and that he paid the defendant "'for the purpose of avoiding prosecution or being sent to the penitentiary or jail.'" *Clifford*, 68 Mont. at 305, 216 P. at 1115. Considering whether the defendant's actions constituted menace, this Court noted that a jury could have come to the conclusion that the "defendant's threats to prosecute and imprison the plaintiff . . . were made solely to compel the payment of a debt alleged to be due to the defendant from the plaintiff," and reversed the district court. *Clifford*, 68 Mont. at 306, 309, 216 P. at

1115-16. This Court examined a number of authorities and concluded "[t]he foregoing authorities fully sustain the proposition that even a lawful imprisonment for an unlawful purpose will constitute duress, and therefore the threat of imprisonment for such purpose constitutes menace . . . ." *Clifford*, 68 Mont. at 306-08, 216 P. at 1116.

¶14 Collins also cites *Averill Machinery Co. v. Taylor*, 70 Mont. 70, 223 P. 918 (1924). There the plaintiff company sued to enforce payment of promissory notes executed by mother and son defendants and to foreclose a real estate mortgage executed by the mother. *Averill*, 70 Mont. at 75-76, 223 P. at 919-20. Defendants defended by claiming that plaintiff's agent represented that the son had committed a crime punishable by imprisonment, and that unless he executed and delivered to plaintiff the notes and had his mother secure the payment of the notes by the mortgage, "plaintiff would prosecute him, cause him to be arrested and sent to the penitentiary." *Averill*, 70 Mont. at 76-77, 223 P. at 919-20. It was alleged that the son was unfamiliar with business and was not given any opportunity to seek or obtain counsel, and that the notes and mortgage were executed solely by reason of fear produced by such threats. *Averill*, 70 Mont. at 76-77, 223 P. at 920. This Court affirmed judgment in favor of the defendants and reasoned that "[i]f the threats of prosecution actually excited in the mind of each of these defendants a fear of imminent arrest and punishment of [the son], and impelled by that fear alone the notes and mortgage were executed, it was wholly immaterial whether he was guilty or

8

innocent, for there is absent the indispensable element—consent freely given." *Averill*, 70 Mont. at 78, 83, 223 P. at 920, 922 (citations omitted).[1,2]

¶15 The facts here require a different conclusion than reached in those cases. The communication in question was by letter, sent from Fronks' counsel. This letter stated:

> We are extending one more opportunity to meet and try to resolve this in an amicable fashion. If I either get no response, or your clients do not wish to resolve this, Fronks will be turning over all original bills of sale . . . and asking the County to pursue felony criminal charges against Collins. In addition, my clients will bring a civil action.
> Please be advised that I have left a message at your office trying to set up a meeting. . . . Your clients must attend this meeting so we have some chance of resolving these issues short of litigation. Time is absolutely of the essence.

Unlike the facts in the cases cited by defendants, Collins were represented by legal counsel, and the communication was made between the parties' attorneys, not to the parties. The letter did not threaten or mention imprisonment to compel payment. Instead, criminal remedies were mentioned along with civil remedies in an effort to prompt Collins to avail themselves of "one more opportunity to meet and try to resolve this." Collins were represented by counsel at the later meeting, which was conducted at their own counsel's office. They were free to abandon negotiations at any time. *See*

---

[1] *Valley Bank of Ronan v. Hughes*, 2006 MT 285, ¶ 37, 334 Mont. 335, 147 P.3d 185 recently relied upon *Averill* for its discussion of ratification of a contract. *Valley Bank* cited to *Averill's* ratification discussion to negate the defendant's claim of the invalidity of a promissory note due to alleged menace. *Valley Bank*, ¶ 37 (citing *Averill*, 70 Mont. at 79-80, 223 P. at 921).

[2] The District Court mistakenly quoted from the counsel's argument section of the *Averill* case, instead of the majority opinion. However, "[w]e will not reverse a district court where it reached the right result, although for the wrong reason." *Ronning v. Yellowstone Co.*, 2011 MT 79, ¶ 8, 360 Mont. 108, 253 P.3d 818 (citations omitted).

*Degenhardt v. Dillon Co.*, 669 A.2d 946, 951 (Pa. 1996) (citation omitted) ("In short, there can be no duress where the contracting party is free to come and go and to consult with counsel before assuming new contractual obligations."). Further, there was no evidence of "unlawful confinement" of Collins, nor of lawful confinement "fraudulently obtained or fraudulently made unjustly harassing or oppressive." Section 28-2-402(1), (3), MCA. *See Matthews*, 196 Mont. at 52-53, 637 P.2d at 824 (because there was "no evidence of confinement or detention," the appellants' consent in signing a security agreement and quitclaim deed for payment of legal fees was not obtained through duress).

¶16    We concur with the District Court that the Agreement did not suffer from a lack of consent by virtue of duress or menace.

¶17    Affirmed.

¶18

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT