DA 07-0173

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 128

IN RE THE LICENSE SUSPENSION OF

BEVERLY SAMPSON CYBULSKI.

APPEAL FROM:    District Court of the Sixteenth Judicial District,
                In and For the County of Custer, Cause No. DV 06-119
                Honorable Gary L. Day, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Honorable Mike McGrath, Attorney General, Brenda G. Nordlund;
            Assistant Attorney General, Helena, Montana

            Wyatt A. Glade; County Attorney, Miles City, Montana

      For Appellee:

            A. Lance Tonn; Lucas & Tonn, P.C., Miles City, Montana

Submitted on Briefs:  February 20, 2008

Decided:  April 21, 2008

Filed:

_____
                     Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     The State appeals the District Court's order reinstating Beverly Cybulski's driver's license.  We reverse.

¶2     We restate the issue as follows:

¶3     **Did the District Court err by granting Cybulski's petition to reinstate her driving privileges?**

## BACKGROUND

¶4     At about 11:25 p.m. on August 21, 2006, Dispatcher Lyne Anderson of Miles City received a 911 call from a driver on I-94 east who reported that he had just passed a red Camaro or Firebird near mile marker 188 going the wrong way on the highway.  This citizen tip was confirmed a short time later by Under Sherriff Roos, who passed the red Camaro near mile marker 168.  Roos contacted Dispatcher Anderson to report that the vehicle was traveling westbound in the eastbound lane of I-94, in excess of 100 miles per hour.  Deputy Hayter was present at the dispatch center that evening, and overheard the calls come in.  When it became clear that the Camaro was approaching his jurisdiction, he left the dispatch center to respond to the call.

¶5     Deputy Hayter parked his patrol car on the cross-over near exit 146 to intercept the Camaro.  He requested the assistance of other peace officers in stopping the Camaro.  In the meantime, 911 calls from drivers on I-94 continued to pour in.

¶6     Close to 11:53 p.m., Deputy Hayter got a visual on the red Camaro traveling west in the eastbound lane of I-94.  According to Hayter's radar, the car was traveling at 75 miles per hour.  He activated his lights and sirens, and began pursuit of the vehicle.  The

2

Camaro failed to respond. Several miles later, with Deputy Hayter still in pursuit, the Camaro passed Sergeant Davis. Davis was staked out near exit 141, waiting to intercept the errant Camaro. Davis activated his emergency lights and sirens, and joined the pursuit.

¶7　After driving on the wrong side of the divided highway for nearly fifty miles, passing multiple vehicles traveling in the opposite direction, and being pursued for more than six miles by police officers with emergency lights and sirens activated, the red Camaro finally slowed to a stop near mile marker 139. Sergeant Davis reached the car first, and gave some commands to the driver, a woman later identified as Beverly Cybulski ("Cybulski"). Cybulski did not respond to Davis's instructions, so he forcibly removed her from the vehicle, and placed her facedown on the ground. Deputy Hayter assisted Sergeant Davis in restraining Cybulski. Both officers noticed a strong odor of alcohol on her person, though the record contains conflicting evidence as to whether they noticed this before or after handcuffing her.

¶8　After Sergeant Davis read Cybulski her Miranda rights, Cybulski admitted that she had been drinking. Both officers noticed that Cybulski seemed disoriented and confused. Davis handed custody of Cybulski over to Deputy Hayter, who took her to the Custer County Detention Center for further processing and DUI testing.

¶9　At the detention center, Deputy Hayter administered several sobriety tests to Cybulski. Cybulski indicated that due to a prior injury or surgery, she could not perform any tests which involved walking or standing on one leg. Deputy Hayter asked Cybulski to recite the alphabet. Midway through the alphabet, she paused, and then asked if she

3

could continue. Deputy Hayter indicated that she could, and she then finished the recitation. In Hayter's judgment, Cybulski failed the alphabet test.

¶10 Next, Hayter administered the HGN test. He was trained to administer the test; however, this was the first time he had actually given one. Deputy Hayter noticed that Cybulski's eyes were red and bloodshot, and after observing her involuntary eye movements, concluded that she failed the HGN test. He then asked her to perform a breathalyzer test, and explained the consequences of refusing under Montana's informed consent law. Cybulski refused; Deputy Hayter read her her Miranda rights again, and turned her over to the detention staff. Deputy Hayter issued three citations to Cybulski: first, for driving under the influence of alcohol in violation of § 61-8-401, MCA; second, for driving on the wrong side of a divided highway in violation of § 61-8-330, MCA; and third, for reckless driving in violation of § 61-8-301, MCA. The time of each offense was listed as five minutes after twelve.

¶11 Cybulski subsequently filed a petition for reinstatement of her driver's license. The State moved for summary judgment, arguing that since Cybulski subsequently pled guilty to the divided highway traffic violation, no genuine issue of material fact existed as to whether her arrest was "supported by legally obtained particularized suspicion." Cybulski cross-moved for summary judgment on the same issue. The court partially granted the State's motion, noting that at the summary judgment hearing, both parties conceded that the officers had the requisite particularized suspicion to conduct an initial traffic stop of Cybulski's vehicle. Cybulski reserved the issue of whether the officers had particularized suspicion to conduct sobriety testing for resolution at trial. The court

4

denied Cybulski's summary judgment motion, concluding that genuine issues of material fact existed as to whether "there was particularized suspicion for the officer to believe that the driver was intoxicated."

¶12 The court then held a full hearing on the petition. Cybulski's counsel called Deputy Hayter as a witness, and asked him when, in his opinion, Cybulski was under arrest for driving under the influence of alcohol. Deputy Hayter testified that "[s]he was, I believe, under arrest when she was handcuffed." On cross-examination, Deputy Hayter testified that he would have placed Cybulski in custody for the traffic violations regardless of whether he had observed any indicators that she was under the influence of alcohol. He explained that he chose to conduct the sobriety testing at the detention center, after she was taken into custody, because it was too hazardous to conduct the testing on the highway.

¶13 Before the State finished examining Deputy Hayter, the court informed counsel that it was ready to rule. The State sought to call Sergeant Davis as a witness, and to introduce a video tape of the arrest into evidence. The court refused, and explained that it found Deputy Hayter's testimony as to the time of the arrest outcome-determinative. The court held that Deputy Hayter lacked both the particularized suspicion required to conduct sobriety tests on Cybulski, and the probable cause to arrest her for driving under the influence. As a result, the court held that the requirements of § 61-8-403(4)(a), MCA, were not satisfied, and her license should not have been suspended. The court issued an order reinstating Cybulski's driving privileges, which the State now appeals.

5

## STANDARD OF REVIEW

¶14 We review a district court's order denying or granting a petition for reinstatement of a driver's license to determine whether the findings of fact are clearly erroneous, and whether its conclusions of law are correct. *Bush v. Montana Dept. of Justice,* 1998 MT 270, ¶ 7, 291 Mont. 359, ¶ 7, 968 P.2d 716, ¶ 7. A court's findings of fact are clearly erroneous if they are not supported by substantial evidence, if the court has misapprehended the effect of the evidence, or if our review of the record convinces us that a mistake has been made. *Bush*, ¶ 7.

## DISCUSSION

¶15 **Did the District Court err by granting Cybulski's petition to reinstate her driving privileges?**

¶16 Under § 61-8-402, MCA, any person driving on a public road in this state has given implied consent to chemical testing to determine whether they are driving under the influence of drugs and/or alcohol. If a driver refuses to submit to testing, his or her driver's license will be immediately confiscated and suspended. Section 61-8-402(4), MCA. When reviewing the suspension of a driver's license under this part, the district court is limited to considering the issues set forth in § 61-8-403(4)(a), MCA, which (in relevant part) are whether:

> (i) a peace officer had reasonable grounds to believe that the person had been driving or was in actual physical control of a vehicle upon ways of this state open to the public while under the influence of alcohol, drugs, or a combination of the two and the person was placed under arrest for violation of 61-8-401; . . . and (iv) the person refused to submit to one or more tests designated by the officer.

6

In interpreting this section, the district court considers three distinct issues:

> (1) whether the arresting officer had reasonable grounds to believe the petitioner had been driving or was in actual physical control of a vehicle upon a way of the state open to the public while under the influence of drugs or alcohol; (2) whether the petitioner was lawfully under arrest; and (3) whether the petitioner refused to submit to a blood or breath test.

*Muri v. State*, 2004 MT 192, ¶ 9, 322 Mont. 219, ¶ 9, 95 P.3d 149, ¶ 9. Cybulski has stipulated that she refused to submit to the breath test proffered by Deputy Hayter. Thus, only the first two issues are in dispute; we consider each in turn.

¶17 Before we turn to our analysis of whether Deputy Hayter had reasonable grounds to believe that Cybulski was driving under the influence, and whether she was lawfully under arrest for violating § 61-8-401, MCA, we must address a threshold issue. At the hearing, Deputy Hayter testified that Cybulski was under arrest for driving under the influence at the time that she was placed in handcuffs. Based on this testimony alone, the District Court concluded: "I find that Cybulski was under arrest for the offense of driving under the influence of alcohol at the time her hands were cuffed behind her back after the initial stop . . . . I further find that said arrest was unlawful because, at that time, the officer did not have particularized suspicion that Mrs. Cybulski was driving under the influence of alcohol." As a result, the District Court found that "all testing to determine the state of Cybulski's being under the influence of alcohol or the lack thereof was unlawful as said testing must be first preceded by a lawful arrest."

¶18 In reaching this conclusion, the District Court erred by giving conclusive weight to Deputy Hayter's subjective opinion that Cybulski was under arrest for driving under the influence at the time she was handcuffed. The Supreme Court of the United States has

7

clearly stated that an arresting officer's subjective opinion or state of mind is irrelevant to determining whether probable cause existed:

> [A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause . . . . Subjective intent of the arresting officer . . . is simply no basis for invalidating an arrest. Those are lawfully arrested whom the facts known to the arresting officers give probable cause to arrest.

*Devenpeck v. Alford*, 543 U.S. 146, 153-55, 125 S. Ct. 588, 593-94 (2004) (citations omitted). Deputy Hayter's own subjective opinion as to when Cybulski was under arrest for the charge of driving under the influence is legally irrelevant. The only legally relevant facts are those facts and circumstances within Deputy Hayter's personal knowledge. Rather than relying on Deputy Hayter's subjective opinion, the District Court should have made its own independent legal determination of whether Deputy Hayter had reasonable grounds and probable cause to believe that Cybulski was driving under the influence of alcohol. We consider those issues now.

¶19 ***A. Did Deputy Hayter have reasonable grounds to believe that Cybulski was driving under the influence of drugs and/or alcohol?***

¶20 We have held that the standard for finding "reasonable grounds" under § 61-8-403(4)(a)(i), MCA, is identical to the "particularized suspicion" standard under § 46-5-401, MCA. *Bush*, ¶ 10. Whether particularized suspicion exists to justify an investigative stop under this section is a question of fact which depends on the totality of the circumstances. *State v. Loney*, 2004 MT 204, ¶ 7, 322 Mont. 305, ¶ 7, 95 P.3d 691, ¶ 7. We use a two-step test to determine whether sufficient particularized suspicion existed to justify an investigative stop: "(1) objective data from which an experienced

officer can make certain inferences; and (2) a resulting suspicion that the occupant of a certain vehicle is or has been engaged in wrong doing." *Loney*, ¶ 7.

¶21 The District Court ruled that, as a matter of law, Deputy Hayter had the requisite particularized suspicion to stop Cybulski for violating § 61-8-330, MCA, by driving on the wrong side of the highway. Cybulski does not challenge this, but instead argues that Deputy Hayter lacked the requisite particularized suspicion to believe that Cybulski was driving under the influence, and to conduct sobriety testing. Of course, the particularized suspicion justifying the initial traffic stop may also serve as the necessary particularized suspicion for administering field sobriety tests. *Hulse v. State*, *Dept of Justice,* 1998 MT 108, ¶ 39, 289 Mont. 1, ¶ 39, 961 P.2d 75, ¶ 39. However, in reviewing a license suspension, § 61-8-403(4)(a)(i), MCA, specifically requires us to consider whether the "peace officer had reasonable grounds to believe that the person had been driving . . . while under the influence of alcohol." To examine whether sufficient objective data existed that would allow an experienced officer to suspect that Cybulski was driving under the influence of alcohol, we must return to the facts in detail.

¶22 Cybulski drove on the wrong side of a major interstate highway for more than forty miles, oblivious to the fact that she was passing traffic traveling in the opposite direction. From the numerous 911 calls, the officers knew that Cybulski had been traveling in the wrong lane of the divided highway for at least a half an hour. The officers were entitled to rely on these citizen tips, because though they were anonymous, their credibility was confirmed by Under Sheriff Roos's eyewitness account (Roos passed Cybulski on I-94 shortly after the first 911 call came in), and later by their own firsthand

9

observation. *State v. Sharp*, 217 Mont. 40, 45-46, 702 P.2d 959, 962 (1985) (holding that an officer was entitled to rely on a citizen tip which was "corroborated when [the officer] found the described vehicle going in the direction and on the highway reported by the telephone caller.").

¶23 Furthermore, Cybulski failed to promptly respond to Deputy Hayter's emergency signals and directives to pull over. In *Henderson*, we held that a driver's failure to immediately respond to an officer's emergency signals for two and a half blocks constituted a particularized suspicion that the driver "might be impaired." *State v. Henderson*, 1998 MT 233, ¶ 5, 291 Mont. 77, ¶ 5, 966 P.2d 137, ¶ 5. Here, Cybulski continued to drive for six miles after Deputy Hayter activated his emergency signals, and did not pull over until after Sergeant Davis had joined in the pursuit. Once Cybulski was stopped, Sergeant Davis approached her vehicle and gave her several commands, but she still did not respond. Sergeant Davis had to physically remove Cybulski from her vehicle.

¶24 We conclude that an experienced officer could infer that Cybulski was driving under the influence from the sheer length of time that Cybulski traveled on the wrong side of the interstate, and her apparent obliviousness to oncoming traffic traveling in the same lane. When this was paired with Cybulski's unusually delayed response to the officer's emergency signals, spotlights, and sirens, Deputy Hayter was entitled to infer that Cybulski was driving under the influence before she even stopped her car. Therefore, Deputy Hayter had the requisite particularized suspicion to believe that Cybulski was driving under the influence, and to conduct further sobriety testing.

10

¶25   ***B. Was Cybulski lawfully under arrest for violating § 61-8-401, MCA?***

¶26   Under § 61-8-403(4)(a), MCA, an officer's request for a chemical sobriety test must be preceded by a lawful arrest for violating § 61-8-401, MCA. *Bush*, ¶ 12. To be lawful, the arrest must comply with all the constitutional and statutory requirements for a warrantless arrest. Section 46-6-311, MCA; *Bush*, ¶ 12. A peace officer may arrest a person without a warrant if the officer has probable cause to believe that the person is committing an offense or that the person has committed an offense and existing circumstances require immediate arrest. Section 46-6-311 (1), MCA. Probable cause exists if, at the time of the arrest, there were sufficient facts and circumstances within the officer's personal knowledge to warrant a reasonable person's belief that the suspect had committed an offense. *Bush*, ¶ 12.

¶27   Deputy Hayter had probable cause to arrest Cybulski for driving under the influence before the officers even removed her from the vehicle. Deputy Hayter knew that Cybulski had been traveling westbound in the eastbound lane on I-94 for at least a half an hour. The entire time, she was unaware that she was passing oncoming traffic in her lane, not to mention billboards facing the wrong way. Deputy Hayter chased Cybulski for more than six miles, but she was oblivious to his emergency signals, siren, and spotlight. She did not pull over until Sergeant Davis joined the chase. Once her vehicle was stopped, she failed to respond to Sergeant Davis's instructions, and so the officers had to forcibly remove her from the car. In sum, there were more than enough facts and circumstances within Deputy Hayter's personal knowledge to support a reasonable belief that Cybulski was driving under the influence of alcohol that night.

¶28 Cybulski argues that Deputy Hayter could not have had probable cause to arrest her for driving under the influence, because he did not observe that her eyes were bloodshot or smell alcohol on her breath *before* arresting her. Probable cause does not usually develop until after the officer stops the vehicle and observes the driver. However, given the flagrant nature of Cybulski's traffic violation, her absolute obliviousness to her surrounding environment, and her delayed response to the officers' attempts to pull her over, Deputy Hayter had sufficient probable cause to arrest her immediately for driving under the influence. Under these egregious circumstances, a reasonable person could certainly conclude that Cybulski was driving under the influence of alcohol.

¶29 Nor was Deputy Hayter required to administer sobriety tests at the scene before arresting Cybulski. Sobriety testing is not a prerequisite to finding probable cause; we have held that "the absence of such tests do[es] not fatally flaw the probable cause determination." *City of Missoula v. Forest*, 236 Mont. 129, 133, 769 P.2d 699, 701 (1989). In this case, Deputy Hayter had ample probable cause to arrest Cybulski for drunk driving without conducting any sobriety testing.

¶30 In sum, Deputy Hayter had both particularized suspicion to believe that Cybulski was driving under the influence of alcohol, and probable cause to arrest her for violating § 61-8-401, MCA. Thus, Cybulski was lawfully under arrest for driving under the influence of alcohol at the time the officers handcuffed her on the interstate.

## CONCLUSION

¶31 The District Court erred in finding that Deputy Hayter did not have particularized suspicion to ask Cybulski to submit to sobriety testing. The court also erred in

12

concluding that Deputy Hayter did not have probable cause to arrest Cybulski for driving under the influence of alcohol. Cybulski was lawfully under arrest for driving under the influence of alcohol at the time Deputy Hayter asked her to submit to a breathalyzer test. Cybulski refused; pursuant to § 61-8-402(4), MCA, her license was properly suspended. Reversed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS
/S/ JIM RICE

13