

DA 07-0733

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 70

STATE OF MONTANA,

        Plaintiff and Appellee,

v.

BEVERLY SAMPSON CYBULSKI,

        Defendant and Appellant.


APPEAL FROM:    District Court of the Sixteenth Judicial District,
                      In and For the County of Custer, Cause Nos. DC 2007-06 and DC 2007-08
                      Honorable Joe L. Hegel, Presiding Judge


COUNSEL OF RECORD:

        For Appellant:

                A. Lance Tonn, Lucas and Tonn, Miles City, Montana

        For Appellee:

                Hon. Steve Bullock, Montana Attorney General, Sheri K. Sprigg,
                Assistant Attorney General, Helena, Montana

                Wyatt A. Glade, Custer County Attorney, Miles City, Montana


                            Submitted on Briefs: February 4, 2009

                                  Decided: March 10, 2009

Filed:

          _____
                        Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Beverly Cybulski appeals her conviction in the District Court for the Sixteenth Judicial District, Custer County, on the charges of Criminal Endangerment and Driving Under the Influence of Alcohol (DUI). We affirm.

¶2 Cybulski raised ten issues on appeal which we have restated as follows:

¶3 1. Whether the District Court erred in denying Cybulski's motion to suppress evidence based on an allegedly illegal arrest.

¶4 2. Whether the District Court erred in denying Cybulski's motion to dismiss the DUI charge on speedy trial grounds.

¶5 3. Whether the District Court abused it discretion in instructing the jury on the definition of Criminal Endangerment.

¶6 4. Whether the District Court erred in denying Cybulski's motion to dismiss the Criminal Endangerment charge for insufficient evidence at the close of the State's case-in-chief.

¶7 5. Whether the District Court erred in granting the State's motion for joinder of the DUI and Criminal Endangerment charges.

¶8 6. Whether the District Court erred in denying Cybulski's motion to dismiss the Criminal Endangerment charge based on alleged prosecutorial misconduct.

¶9 7. Whether the District Court abused its discretion in admitting the patrol car video taken by the officer who stopped Cybulski and removed her from her vehicle.

¶10 8. Whether the District Court abused its discretion in admitting the transcript of the 911 calls.

2

¶11    9. Whether the District Court abused its discretion in admitting the video of Cybulski undergoing sobriety testing at the detention center, with a portion of the video muted.

¶12    10. Whether the District Court erred in denying Cybulski's motion to dismiss the Criminal Endangerment charge on double jeopardy grounds.

¶13    M. R. App. P. 12(1)f. requires that parties cite to relevant authorities and statutes in support of their arguments on appeal. In this case, Cybulski failed to cite to any statutes or caselaw in support of her arguments regarding joinder, prosecutorial misconduct or double jeopardy (Issues 5, 6 and 10). We have repeatedly held that it is not this Court's obligation to conduct legal research on behalf of a party or to develop legal analysis that might support a party's position. *State v. Torgerson*, 2008 MT 303, ¶ 36, 345 Mont. 532, 192 P.3d 695.

¶14    In addition, instead of setting forth her legal arguments in her brief on appeal regarding her joinder and double jeopardy claims (Issues 5 and 10), Cybulski noted that she intended to rely upon the arguments on these issues made in her briefs before the District Court. This is entirely improper. "The mere reference to arguments and authorities presented in district court proceedings is no substitute for developing and presenting appellate arguments." *State v. Ferguson*, 2005 MT 343, ¶ 41, 330 Mont. 103, 126 P.3d 463. And, as the State points out, allowing Cybulski to incorporate trial arguments into appellate briefs by reference seriously undermines the word and page limitations in M. R. App. P. 11(4).

¶15 Consequently, because of Cybulski's inadequate briefing on Issues 5, 6 and 10, we decline to consider her arguments on those issues.

## Factual and Procedural Background

¶16 The basic facts of this case were set forth in another matter before this Court pertaining to Cybulski's petition for reinstatement of her driver's license. *See In re License Suspension of Cybulski*, 2008 MT 128, 343 Mont. 56, 183 P.3d 39 (*Cybulski I*). The facts detailed in *Cybulski I* that are pertinent to the instant appeal include:

> At about 11:25 p.m. on August 21, 2006, Dispatcher Lyne Anderson of Miles City received a 911 call from a driver on I-94 east who reported that he had just passed a red Camaro or Firebird near mile marker 188 going the wrong way on the highway. This citizen tip was confirmed a short time later by Undersheriff Roos, who passed the red Camaro near mile marker 168. Roos contacted Dispatcher Anderson to report that the vehicle was traveling westbound in the eastbound lane of I-94, in excess of 100 miles per hour. Deputy Hayter was present at the dispatch center that evening, and overheard the calls come in. When it became clear that the Camaro was approaching his jurisdiction, he left the dispatch center to respond to the call.
>
> Deputy Hayter parked his patrol car on the cross-over near exit 146 to intercept the Camaro. He requested the assistance of other peace officers in stopping the Camaro. In the meantime, 911 calls from drivers on I-94 continued to pour in.
>
> Close to 11:53 p.m., Deputy Hayter got a visual on the red Camaro traveling west in the eastbound lane of I-94. According to Hayter's radar, the car was traveling at 75 miles per hour. He activated his lights and sirens, and began pursuit of the vehicle. The Camaro failed to respond. Several miles later, with Deputy Hayter still in pursuit, the Camaro passed Sergeant Davis. Davis was staked out near exit 141, waiting to intercept the errant Camaro. Davis activated his emergency lights and sirens, and joined the pursuit.
>
> After driving on the wrong side of the divided highway for nearly fifty miles, passing multiple vehicles traveling in the opposite direction, and being pursued for more than six miles by police officers with emergency lights and sirens activated, the red Camaro finally slowed to a stop near mile marker 139. Sergeant Davis reached the car first, and gave some commands to the driver, a woman later identified as . . . Cybulski . . . .

4

Cybulski did not respond to Davis's instructions, so he forcibly removed her from the vehicle, and placed her facedown on the ground. Deputy Hayter assisted Sergeant Davis in restraining Cybulski. Both officers noticed a strong odor of alcohol on her person, though the record contains conflicting evidence as to whether they noticed this before or after handcuffing her.

After Sergeant Davis read Cybulski her Miranda rights, Cybulski admitted that she had been drinking. Both officers noticed that Cybulski seemed disoriented and confused. Davis handed custody of Cybulski over to Deputy Hayter, who took her to the Custer County Detention Center for further processing and DUI testing.

At the detention center, Deputy Hayter administered several sobriety tests to Cybulski. Cybulski indicated that due to a prior injury or surgery, she could not perform any tests which involved walking or standing on one leg. Deputy Hayter asked Cybulski to recite the alphabet. Midway through the alphabet, she paused, and then asked if she could continue. Deputy Hayter indicated that she could, and she then finished the recitation. In Hayter's judgment, Cybulski failed the alphabet test.

Next, Hayter administered the HGN test. He was trained to administer the test; however, this was the first time he had actually given one. Deputy Hayter noticed that Cybulski's eyes were red and bloodshot, and after observing her involuntary eye movements, concluded that she failed the HGN test. He then asked her to perform a breathalyzer test, and explained the consequences of refusing under Montana's informed consent law. Cybulski refused; Deputy Hayter read her her Miranda rights again, and turned her over to the detention staff.

*Cybulski I*, ¶¶ 4-10.

¶17 Cybulski was charged with DUI in violation of § 61-8-401, MCA; Driving on the Wrong Side of a Divided Highway in violation of § 61-8-330, MCA; and Reckless Driving in violation of § 61-8-301, MCA. On November 1, 2006, she pled guilty in Justice Court to the charge of Driving on the Wrong Side of a Divided Highway, and she was fined $85. Trial for the two remaining charges was set for February 14, 2007.

¶18 On February 1, 2007, the Justice of the Peace granted Cybulski's motion to suppress much of the State's evidence based on the legality of her arrest. The following

5

day, the State appealed to the District Court for a trial de novo. Consequently, the Justice Court trial was vacated and the file was transmitted to the District Court. Thereafter, the State moved to dismiss the misdemeanor Reckless Driving charge and to file an Information charging Cybulski with felony Criminal Endangerment. The District Court granted the State's motions after a hearing and Cybulski was arraigned on the Criminal Endangerment charge. The DUI charge and the Criminal Endangerment charge were joined for trial at the State's request.

¶19 Following a four-day jury trial beginning August 28, 2007, Cybulski was convicted of misdemeanor DUI and felony Criminal Endangerment. She was sentenced to one day in jail on the DUI charge and her driver's license was suspended for six months. Cybulski received a five-year deferred imposition of sentence on the Criminal Endangerment charge to run concurrently with the DUI sentence. She was also fined $1000 on each charge.

¶20 Cybulski appeals the District Court's Judgment.

**Issue 1.**

¶21 *Whether the District Court erred in denying Cybulski's motion to suppress evidence based on an allegedly illegal arrest.*

¶22 Prior to trial, Cybulski moved to suppress all of the evidence collected during and after her arrest on the grounds that her arrest was illegal. The District Court denied the motion concluding that at the time Sergeant Davis removed Cybulski from her vehicle, Sergeant Davis "clearly had a right to suspect that she was under the influence of alcohol or drugs, although some other mental impairment was also possible."

6

¶23 Although the record indicates that both Sergeant Davis and Deputy Hayter stopped Cybulski, that Sergeant Davis forcibly removed Cybulski from her vehicle and read her her *Miranda* rights, and that Sergeant Davis, with Deputy Hayter's assistance, handcuffed Cybulski, Cybulski argues that because Deputy Hayter was an inexperienced officer, he did not meet the first prong of the test to determine whether sufficient probable cause existed to arrest her for DUI. Thus, she contends that her arrest for DUI was unlawful and all evidence concerning sobriety testing, including the video of her arrest, should be suppressed.

¶24 This Court quite recently pointed out that there is no statute in Montana that implicitly or explicitly carves out a class of Montana peace officers as the only officers capable of rendering observations and decisions to form particularized suspicion for an investigatory stop or probable cause for an arrest. *Brown v. State*, 2009 MT 64, ¶ 19, ___ Mont. ___, ___ P.3d ___. We stated in *Brown* that "[r]ather than requiring that *each* officer making an investigative stop have a certain amount of experience, the test for particularized suspicion simply requires that the information available to the investigating officer—whether a rookie or a veteran—be sufficient to allow a hypothetical 'experienced' officer to have either particularized suspicion for a stop, or probable cause for an arrest." *Brown*, ¶ 19 (emphasis in original).

¶25 We held in *Brown* that

> for a peace officer to have particularized suspicion or reasonable grounds for an investigatory stop, the peace officer must be possessed of: (1) objective data and articulable facts from which he or she can make certain reasonable inferences; and (2) a resulting suspicion that the person to be stopped has committed, is committing, or is about to commit an offense.

7

While a peace officer's experience and training may be a factor in determining what sort of reasonable inferences he or she is entitled to make from his or her objective observations, experience and training will not necessarily be the defining element of the test. . . . The courts will look to the facts and to the totality of the circumstances of each case.

*Brown*, ¶ 20.

¶26 In this case, the information available to the investigating officers—Cybulski's driving on the wrong side of the interstate for more than forty miles; her failure to immediately respond to the officers' commands to pull over; her failure to respond to the officers' commands to exit the vehicle; and the strong odor of alcohol coming from her person—were sufficient to allow a hypothetical "experienced" officer to have both a particularized suspicion for a stop, and probable cause for an arrest.

¶27 Accordingly, we hold that the District Court did not err in denying Cybulski's motion to suppress evidence.

**Issue 2.**

¶28 *Whether the District Court erred in denying Cybulski's motion to dismiss the DUI charge on speedy trial grounds.*

¶29 On the day before trial was to commence in this case, Cybulski filed a Motion to Dismiss for Lack of Speedy Trial. The motion consisted of one paragraph and no brief in support of the motion was ever filed. The District Court denied Cybulski's motion on the basis that it was not timely filed, "it was not accompanied by anything approaching what could be considered a Brief," and it did not allege any prejudice to Cybulski.

8

¶30 Cybulski now claims on appeal that the District Court erred when it failed to conduct the analysis required by *State v. Ariegwe*,[1] 2007 MT 204, 338 Mont. 442, 167 P.3d 815, concerning her speedy trial motion. She also claims that because the State appealed the Justice Court's evidentiary rulings, the speedy trial clock did not commence anew on the date the appeal was filed in the District Court.

¶31 Section 46-13-101(4), MCA, provides that

> all pretrial motions must be in writing and must be supported by a statement of the relevant facts upon which the motion is being made. The motion must state with particularity the grounds for the motion and the order or relief sought.

In her Motion to Dismiss for Lack of a Speedy Trial, Cybulski simply stated that more than one year had elapsed since she was charged with the offense of DUI[2] thereby triggering an inquiry into the issue of speedy trial. Such bald assertions fail to fulfill the requirements for pretrial motions that such motions "must state with particularity the grounds for the motion and the order or relief sought." Section 46-13-101(4), MCA; *see also State v. Yecovenko*, 2004 MT 196, ¶ 21, 322 Mont. 247, 95 P.3d 145. Consequently, we hold that the District Court did not err in denying Cybulski's Motion to Dismiss for Lack of a Speedy Trial.

**Issue 3.**

¶32 *Whether the District Court abused its discretion in instructing the jury on the definition of Criminal Endangerment.*

---

[1] This Court decided *Ariegwe* on August 16, 2007. Cybulski's Motion to Dismiss for Lack of a Speedy Trial was filed in the District Court on August 27, 2007.
[2] Prior to the start of trial, Cybulski's attorney clarified that the speedy trial motion applied only to the DUI charge.

¶33 Cybulski contends that the jury was not properly instructed on the "knowingly" element of the criminal endangerment charge. She concedes that driving in the incorrect lane of an interstate highway in the middle of the night creates a substantial risk of death or serious bodily injury to others. However, she contends that she did not realize that she was in the incorrect lane of travel until after she was stopped. Consequently, she argues that because she did not knowingly engage in dangerous behavior, she should have been charged with negligent endangerment or some other misdemeanor offense. She maintains that the totality of the instructions given by the District Court diminished the requirement that she had to have "knowingly" engaged in the dangerous behavior to be guilty of criminal endangerment.

¶34 In considering whether a district court has correctly instructed the jury in a criminal case, we determine whether the instructions, taken as a whole, fully and fairly instructed the jury on the law applicable to the case. *State v. Archambault*, 2007 MT 26, ¶ 14, 336 Mont. 6, 152 P.3d 698 (citing *State v. Courville*, 2002 MT 330, ¶ 15, 313 Mont. 218, 61 P.3d 749). Recognizing that a district court has broad discretion when it instructs a jury, we review a district court's decisions regarding jury instructions to determine whether the court abused its discretion. *State v. Bieber*, 2007 MT 262, ¶ 22, 339 Mont. 309, 170 P.3d 444 (citing *State v. Swann*, 2007 MT 126, ¶ 32, 337 Mont. 326, 160 P.3d 511). To determine whether a district court has abused its discretion in instructing the jury, we determine whether the court acted arbitrarily or exceeded the bounds of reason resulting in substantial injustice. *Bieber*, ¶ 22 (citing *State v. English*, 2006 MT 177, ¶ 50, 333 Mont. 23, 140 P.3d 454). Moreover, to constitute reversible error, any mistake

in rendering the instructions must prejudicially affect the defendant's substantial rights. *Archambault*, ¶ 14; *Courville*, ¶ 15.

¶35 The District Court gave the following instruction to the jury in the instant case:

> A person commits the offense of criminal endangerment if the person knowingly engages in conduct that creates a substantial risk of death or serious bodily injury to another.

This language is taken from § 45-5-207(1), MCA, the criminal endangerment statute. Cybulski offered the following additional language from the statute, which the court refused:

> This conduct includes, but is not limited to, knowingly placing in a tree, log, or other wood any steel, iron, ceramic, or other substance for the purpose of damaging a saw or other wood harvesting, processing, or manufacturing equipment.

¶36 Because this additional language on tree spiking had no application to Cybulski's case, it was correctly refused by the District Court. While district courts must instruct the jury on each theory which is supported by the record, defendants are not entitled to have the jury instructed on every nuance of their theory of the case. *Archambault*, ¶ 25 (citing *State v. Claric*, 271 Mont. 141, 145, 894 P.2d 946, 949 (1995), *overruled in part and on other grounds by Faulconbridge v. State*, 2006 MT 198, 333 Mont. 186, 142 P.3d 777).

¶37 The District Court also refused the following instruction proposed by Cybulski:

> The word "knowingly," as it relates to the charge of criminal endangerment, contemplates a person's awareness of the high probability that the conduct in which he or she is engaging, whatever that conduct may be, will cause a substantial risk of death or serious bodily injury to another.

11

Instead, the court instructed the jury with a shorter and clearer statement that, in essence, says the same thing: "A person acts knowingly when the person is aware there exists the high probability that the person's conduct will cause a specific result."

¶38 Taken as a whole, the jury instructions in this case did not prejudicially affect Cybulski's rights. Rather, the instructions as given by the District Court afforded Cybulski the opportunity to argue her defense theory that she was not aware that her conduct would cause a substantial risk of death or serious bodily injury.

¶39 Accordingly, we hold that the District Court did not abuse its discretion in instructing the jury on the definition of Criminal Endangerment.

**Issue 4.**

¶40 *Whether the District Court erred in denying Cybulski's motion to dismiss the Criminal Endangerment charge for insufficient evidence at the close of the State's case-in-chief.*

¶41 Cybulski's counsel moved to dismiss the charge of criminal endangerment on the basis of insufficient evidence at the close of the State's case-in-chief, but the District Court denied the motion. Cybulski now argues on appeal that the court erred in denying her motion because the "knowingly" element of criminal endangerment was not proven and because there was no proof that the acts constituting criminal endangerment occurred in Custer County. Regarding the latter argument, she maintains that because the interstate was blocked by law enforcement officers in two locations prior to Cybulski entering Custer County and thereby stopping all traffic, there was no one who could have been threatened or injured by her conduct in Custer County, thus the Custer County District Court did not have jurisdiction in this case.

¶42    We review a district court's denial of a motion to dismiss for insufficient evidence de novo. *State v. Rosling*, 2008 MT 62, ¶ 33, 342 Mont. 1, 180 P.3d 1102 (citing *Swann*, ¶¶ 16-19; *State v. McWilliams*, 2008 MT 59, ¶ 37, 341 Mont. 517, 178 P.3d 121). In addition, a motion to dismiss for insufficient evidence is appropriate only if, viewing the evidence in the light most favorable to the prosecution, there is not sufficient evidence upon which a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Rosling*, ¶ 35 (citing § 46-16-403, MCA; *Swann*, ¶¶ 16, 19).

¶43    As to Cybulski's claim that the "knowingly" element of criminal endangerment was not proven, § 45-2-103(3), MCA, provides: "The existence of a mental state may be inferred from the acts of the accused and the facts and circumstances connected with the offense." In addition,

> [a] person who is in an intoxicated condition is criminally responsible for his conduct and an intoxicated condition is not a defense to any offense and may not be taken into consideration in determining the existence of a mental state which is an element of the offense unless the defendant proves that he did not know that it was an intoxicating substance when he consumed, smoked, sniffed, injected, or otherwise ingested the substance causing the condition.

Section 45-2-203, MCA.

¶44    Viewing the evidence in this case in the light most favorable to the prosecution, as we are constrained to do, *Rosling*, ¶ 35, a rational trier of fact could conclude beyond a reasonable doubt that Cybulski was either aware of her conduct and the risk it was creating, or she was unaware solely because of her intoxicated condition. We concluded in *Cybulski I* that it would be proper to infer that Cybulski was driving under the influence based upon "the sheer length of time that Cybulski traveled on the wrong side

13

of the interstate, and her apparent obliviousness to oncoming traffic traveling in the same lane" paired with her "unusually delayed response to the officer's emergency signals, spotlights, and sirens . . . ." *Cybulski* I, ¶ 24. Furthermore, Cybulski was familiar with that stretch of interstate, having driven it many times. There were numerous indicators that she was traveling in the wrong lane including billboards and highway signs facing the wrong way; vehicles approaching and swerving from her lane of travel; and the flashing lights and honking by approaching vehicles, yet Cybulski continued to drive on the wrong side of the interstate for more than forty miles.

¶45 Based on the foregoing, we conclude that the "knowingly" element of criminal endangerment was indeed proven.

¶46 As to Cybulski's argument that the Custer County District Court did not have jurisdiction in this case, the State points out that although Cybulski calls her argument "jurisdictional," she is actually arguing venue. Section 46-3-112(1), MCA, provides that "if two or more acts are requisite to the commission of an offense . . . , the charge may be filed in any county in which any of the acts . . . occurred." In addition, subsection (2) of this statute provides that "if an act requisite to the commission of an offense occurs or continues in more than one county, the charge may be filed in any county in which the act occurred or continued." Section 46-3-112(2), MCA.

¶47 By the plain wording of these statutes, venue was proper in any county where any act requisite to the commission of the offense of criminal endangerment occurred or continued. In this case, Cybulski admitted that she drove on the wrong side of the interstate in Custer County, thus venue was proper in Custer County.

¶48 Furthermore, § 46-3-111(2), MCA, provides that "[a]ll objections that a charge is filed in the improper county are waived by a defendant unless made before the first witness is sworn at the time of trial." There is no indication in the record in this case that Cybulski objected to the charges being filed in and the case being tried in Custer County.

¶49 Accordingly, we hold that the District Court did not err in denying Cybulski's motion to dismiss the charge of criminal endangerment at the close of the State's case-in-chief.

**Issue 7.**

¶50 *Whether the District Court abused its discretion in admitting the patrol car video taken by the officer who stopped Cybulski and removed her from her vehicle.*

¶51 Cybulski argues that the patrol car video of Sergeant Davis following and stopping her vehicle should not have been admitted into evidence because Sergeant Davis recorded over the final few minutes of the video which would have shown Cybulski after she was removed from her vehicle. Cybulski claims that the deleted portion of the video would have shown that she was not "stumbling drunk" and would have resolved contradictions in the testimony of Sergeant Davis and Deputy Hayter concerning Cybulski's behavior immediately after her arrest.

¶52 The District Court responded to Cybulski's objection to the video by pointing out that the erased portion would not have contained any exculpatory evidence.

> While it would have been preferable for the entire video to have been preserved, the Court does not find that the erased portion would have contained any exculpatory images. First, the video shown was of decreasing video quality due to Sgt. Davis's patrol car fogging up because of the police dog's breath. Second, Sgt. Davis was not wearing a personally [sic] microphone and there would have been no audio indicating

15

what Sgt. Davis or Ms. Cybulski was saying. Third, Sgt. Davis testified that he backed up the recording the next day he was on patrol because of the poor quality of what was left, so as to conserve recording time on the tape for further patrol stops. While Ms. Cybulski is suspicious of Sgt. Davis's motives in erasing the last few minutes, the Court is not convinced that the erasure was done in bad faith.

¶53 "[A] district court has broad discretion in determining whether evidence is relevant and admissible and we will not overturn that determination absent an abuse of discretion." *McCormick v. Brevig*, 2004 MT 179, ¶ 75, 322 Mont. 112, 96 P.3d 697. Cybulski relies on our holding in *McCormick*, for the proposition that the requirement of authentication or identification is a condition precedent to admissibility. Even so, this requirement is satisfied "by evidence sufficient to support a finding that the matter in question is what its proponent claims." M. R. Evid. 901(a). The State did not present the video as anything other than a video of Sergeant Davis's chase and stop of Cybulski. Furthermore, Cybulski thoroughly cross-examined Sergeant Davis as to the reason the video stopped where it did and what occurred after the video stopped.

¶54 Accordingly, we hold that the District Court did not abuse its discretion in admitting the patrol car video.

**Issue 8.**

¶55 *Whether the District Court abused its discretion in admitting the transcript of the 911 calls.*

¶56 Cybulski contends that the District Court admitted an unauthenticated transcript of 911 calls without proper foundation. She argues that the original tape recording was available and should have been played to the jury.

16

¶57 We review a district court's evidentiary decisions to determine whether the court abused its discretion. *State v. Mizenko*, 2006 MT 11, ¶ 8, 330 Mont. 299, 127 P.3d 458, *cert. denied*, 549 U.S. 810, 127 S. Ct. 43 (2006) (citing *State v. Cameron*, 2005 MT 32, ¶ 14, 326 Mont. 51, 106 P.3d 1189). We review de novo a district court's conclusions of law and interpretations of the rules of evidence. *Mizenko*, ¶ 8 (citing *State v. Villanueva*, 2005 MT 192, ¶ 9, 328 Mont. 135, 118 P.3d 179; *State v. Mathis*, 2003 MT 112, ¶ 8, 315 Mont. 378, 68 P.3d 756).

¶58 At the pretrial evidentiary hearing, the State introduced a transcript of the 911 calls from the night of Cybulski's arrest reporting a vehicle traveling the wrong direction on the interstate. Cybulski did not object to the admission of the transcript and none of her questioning challenged the accuracy of the transcript.

¶59 At trial, the State laid a foundation for admission of this transcript through the testimony of Lyne Anderson, a 911 dispatcher with the Emergency Operating Center of the Miles City Police Department, who had taken many of the calls. Anderson testified that the calls to 911, as well as police radio traffic concerning the incident, were recorded through a voice-activated recording system. The recordings were then transcribed into a written transcript, which Anderson had reviewed. She testified that the transcript was a true and accurate transcription of the 911 calls and radio traffic.

¶60 Cybulski objected to admission of the transcript on the grounds that it lacked foundation, but the District Court overruled the objection based on Anderson's testimony. Nevertheless, the court stated that Cybulski could play the actual tape if she wanted, but Cybulski did not do so.

¶61 We have repeatedly held that we will not put a trial court in error for a ruling or procedure in which a party acquiesced or participated. *State v. Clay*, 1998 MT 244, ¶ 24, 291 Mont. 147, 967 P.2d 370 (citing *Matter of R.B.O.*, 277 Mont. 272, 283, 921 P.2d 268, 275 (1996); *In re Pedersen*, 261 Mont. 284, 287, 862 P.2d 411, 413 (1993)). It is disingenuous for Cybulski to now argue that the District Court erred in not admitting the actual tape of the 911 calls when the court afforded Cybulski the opportunity to play the tape, but Cybulski failed to do so.

¶62 Accordingly, we hold that the District Court did not abuse its discretion in admitting the transcript of the 911 calls.

**Issue 9.**

¶63 *Whether the District Court abused its discretion in admitting the video of Cybulski undergoing sobriety testing at the detention center, with a portion of the video muted.*

¶64 Cybulski contends that because Officer Hayter was not competent to administer the HGN test, the portion of the video taken at the detention center depicting Officer Hayter administering the test should not have been played to the jury even though the sound was muted. She contends that while the images of her physical characteristics may have been relevant, that fact was substantially outweighed by the danger of unfair prejudice to her by showing that portion of the video.

¶65 We pointed out in the previous issue that we will review a district court's evidentiary decisions to determine whether the court abused its discretion, and we will review de novo a district court's conclusions of law and interpretations of the rules of evidence. *Mizenko*, ¶ 8. Under Montana's Rules of Evidence, "[a]ll relevant evidence is

18

admissible," M. R. Evid. 402, and evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," M. R. Evid. 401. Moreover, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." M. R. Evid. 403.

¶66 In criminal proceedings, probative evidence is almost always prejudicial to the defendant. *State v. Bieber*, 2007 MT 262, ¶ 59, 339 Mont. 309, 170 P.3d 444 (citing *State v. Pittman*, 2005 MT 70, ¶ 27, 326 Mont. 324, 109 P.3d 237). However, unfair prejudice "can arise from evidence that arouses the jury's hostility or sympathy for one side without regard to its probative value, evidence that confuses or misleads the trier of fact, or evidence that might unduly distract the jury from the main issues." *Bieber*, ¶ 59 (citing *State v. Huether*, 284 Mont. 259, 265, 943 P.2d 1291, 1295 (1997)).

¶67 In this case, the District Court denied Cybulski's motion to exclude the portion of the tape showing Deputy Hayter administering the HGN test to Cybulski at the detention center. In doing so, the court concluded that the probative value of the tape outweighed any prejudice to Cybulski and that that portion of the tape should be played with the sound muted unless Cybulski requested that the sound be turned on. Cybulski has failed to point to any unfair prejudice she may have suffered by playing the tape.

¶68 In addition, the State agreed not to introduce the results of the HGN test because Deputy Hayter was not certified to administer the test. However, Cybulski herself asked that the results of the test be included in Deputy Hayter's report when it was admitted into evidence. Once again we note that we will not put a trial court in error for a ruling or

procedure in which a party acquiesced or participated. *Clay*, ¶ 24. By requesting that the results of the HGN test be admitted into evidence, Cybulski waived her objection to the admission of the video depicting the administration of that test.

¶69 Accordingly, we hold that the District Court did not abuse its discretion in admitting the video of Cybulski undergoing the HGN test at the detention center.

¶70 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE
/S/ BRIAN MORRIS