FILED

06/28/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0444

DA 15-0444

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 159N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

DAWNALEE ELLIS-PETERSON,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 13-346
Honorable Russell C. Fagg, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Benjamin J. LaBeau, LaBeau Law Firm, L.L.C., Billings, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Tammy K Plubell, Assistant
Attorney General, Helena, Montana

          Scott D. Twito, Yellowstone County Attorney, Victoria Callender, Deputy
Yellowstone County Attorney, Billings, Montana

Submitted on Briefs:  April 27, 2016

Decided:  June 28, 2016

Filed:

_____
Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 On April 29, 2013, at approximately 7:15 in the morning, Officers Edwards and Beck of the Billings Police Department were dispatched to investigate a report about an intoxicated woman riding a horse. The officers found the woman, Dawnalee Ellis-Peterson (Ellis-Peterson), walking alongside her horse, and they observed that she was stumbling and had difficulty maintaining her balance. Officer Edwards was close enough to Ellis-Peterson to notice that her breath smelled of alcohol, and both officers noticed that her speech was slurred. Based on her behavior, the officers suspected that Ellis-Peterson was intoxicated, but because she was not committing a crime, they allowed her to leave the area. The officers observed that she was physically unable to mount her horse, and after repeated unsuccessful attempts to stay on the horse, she led it away from the area. During this encounter, Officers Beck and Edwards checked Ellis-Peterson's identification and learned that her driver's license was suspended.

¶3 Approximately two hours later, around 9:40 a.m., an unidentified female called 911 and complained to the dispatcher that she should be able to ride a horse without being pulled over by police. The dispatcher informed Officers Edwards and Beck of the call and asked them to perform a welfare check on the woman. The officers responded to

2

her residence, but were initially unable to make contact with the woman. They knocked on the front and back doors of the house and on several windows and stood on the porch and called to her. After a few minutes without a response from the woman, the officers started to walk away from the home when a neighbor, Lori Miller (Miller), informed the officers that the woman was indeed inside. The officers renewed their attempts to contact the woman and were eventually successful.

¶4 The woman appeared in the window, and the officers immediately recognized her as Ellis-Peterson. She was stumbling inside the house and had to prop herself up on the window as she spoke to the officers. She still spoke with a heavy slur, and it was the officers' impression that she was intoxicated. When the officers inquired about her welfare, she responded that she was "okay," was "just drunk," and would like to be left alone. The officers determined that she was not in need of their help, so they began walking away. As they were leaving, Ellis-Peterson opened the door and appeared, naked, to yell incoherently at them.

¶5 The officers did not react to Ellis-Peterson, but instead went to speak to the neighbor, Miller, who was still standing nearby. Because Ellis-Peterson appeared to the officers to be extremely intoxicated, the officers asked Miller to call 911 if she observed Ellis-Peterson leave in a vehicle. Approximately 20 minutes later, at 10:11, Miller called 911 to report that Ellis-Peterson had just left her residence in a green Toyota pickup and was heading southbound on Jefferson. The 911 dispatcher gave officers a description of the vehicle and the license plate numbers, and because Officer Beck was nearby, he

3

responded to the area almost immediately. Officer Edwards also responded to the area as a "cover" or "backup" officer.

¶6 As soon as Officer Beck saw Ellis-Peterson drive by his location, he activated his lights and began following her. Ellis-Peterson drove past many places where it would have been safe to pull over but she did not stop, so Officer Beck activated his siren. Ellis-Peterson continued driving until she pulled into the parking lot of Cabela's, meandered through the parking lot past available parking places, and then parked incorrectly in a parking space near the front of the store. Officer Beck approached the vehicle, and because the window was not rolled down, he opened the driver's side door. He immediately smelled a strong odor of alcohol. Officer Beck determined that Ellis-Peterson was a threat to public safety because she had been initially uncooperative in pulling over, because she was driving on a suspended license, and because he had personal knowledge that she was likely intoxicated. Officer Beck arrested Ellis-Peterson for driving under the influence. He did not have her perform any field sobriety tests at this point because he was "extremely comfortable" that the information he had was sufficient to justify the arrest.

¶7 On May 10, 2013, Ellis-Peterson was charged with felony driving under the influence (DUI), misdemeanor driving while license is suspended or revoked, and misdemeanor driving without liability protection in place. On July 23, 2013, Ellis-Peterson filed a motion to suppress all evidence gained after her arrest, arguing that her arrest was illegal because Officer Beck did not have probable cause to arrest her for DUI. The District Court denied her motion after holding a hearing. Ellis-Peterson then

4

entered a plea agreement with the state, whereby she pled guilty to DUI and the state moved to dismiss the two misdemeanor offenses. Ellis-Peterson reserved her right to appeal the District Court's order denying her motion to suppress evidence. The District Court sentenced her to 13 months with the Department of Corrections, followed by a four-year suspended sentence. Ellis-Peterson now appeals the denial of her motion to suppress evidence. We review a district court's denial of a motion to suppress evidence to determine whether its findings of fact are clearly erroneous and its conclusions of law are correct. *State v. Braulick*, 2015 MT 147, ¶ 13, 379 Mont. 302, 349 P.3d 508.

¶8      "A peace officer may arrest a person when a warrant has not been issued if the officer has probable cause to believe that the person is committing an offense or that the person has committed an offense and existing circumstances require immediate arrest." Section 46-6-311(1), MCA.   We have said before that one of the "existing circumstances" referred to in § 46-6-311(1), MCA, is "concern for the safety of the offender or the public." *Muller v. State*, 2012 MT 66, ¶ 14, 364 Mont. 328, 274 P.3d 737 (internal quotations omitted). "Probable cause to arrest is established if the facts and circumstances within an officer's personal knowledge, or related to the officer by a reliable source, are sufficient to warrant a reasonable person to believe that someone is committing or has committed an offense." *State v. Ditton*, 2009 MT 57, ¶ 21, 349 Mont. 306, 203 P.3d 806 (quoting *State v. Williamson*, 1998 MT 199, ¶ 12, 290 Mont. 321, 965 P.2d 231) (internal quotations omitted).  "The probable cause determination must be based on an assessment of all relevant circumstances, evaluated in light of the knowledge

of a trained law enforcement officer." *City of Missoula v. Iosefo*, 2014 MT 209, ¶ 10, 376 Mont. 161, 330 P.3d 1180 (quoting *Williamson*, ¶ 21) (internal quotations omitted).

¶9     We are satisfied that Officer Beck had probable cause to arrest Ellis-Peterson without a warrant.   Prior to arresting Ellis-Peterson, Officer Beck had had two interactions with her earlier in the day.   During all three encounters, Officer Beck personally observed Ellis-Peterson exhibiting signs of intoxication: she stumbled, had trouble keeping her balance, slurred her speech, and smelled strongly of alcohol.   During their second interaction, a mere 20 minutes before her arrest, she even told Officers Beck and Edwards that she was drunk.   Officer Beck's training as a law enforcement officer would have enabled him to recognize these behaviors as signs of intoxication, and to conclude that it would be a crime for Ellis-Peterson to drive a vehicle in such a state.

¶10     Field sobriety testing would perhaps have provided further support for Officer Beck's strong and reasonable assumption that Ellis-Peterson was intoxicated, but we have said before that "[s]obriety testing is not a prerequisite to finding probable cause," *In re License Suspension of Cybulski*, 2008 MT 128, ¶ 29, 343 Mont. 56, 183 P.3d 39, and "the absence of such tests do not fatally flaw the probable cause determination," *State v. Hafner*, 2010 MT 233, ¶ 16, 358 Mont. 137, 243 P.3d 435 (citing *Cybulski*, ¶ 29) (internal quotations omitted).   Even without field sobriety testing, all the facts and circumstances within Officer Beck's personal knowledge were sufficient to warrant his belief that Ellis-Peterson was committing the crimes of driving under the influence and driving on a suspended license.   His determination that an intoxicated driver with a suspended license is a public safety threat was an "existing circumstance" that justified

6

an immediate arrest without a warrant. Because Officer Beck had probable cause to arrest Ellis-Peterson, the District Court did not err in denying her motion to suppress evidence obtained after her arrest.

¶11    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶12    Affirmed.

/S/ PATRICIA COTTER

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON